12587

ACME MANUFACTURING COMPANY v. MASSEY *ET AL.*

(146 S. E., 605)

*Messrs. R. E. Wylie,* and *Willcox & Hardee,* for appellants,

*Messrs. Williams & Stewart,* for respondents, 

February 12, 1929.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

This action is upon complaint, stated in separate causes of action, for goods sold and delivered, to wit, a carload of fertilizer shipped April 18, 1925, and a carload shipped June 2, 1925, by plaintiff to defendants, it being alleged by the plaintiff that said fertilizer was sold and delivered under the terms of a dealer's contract attached to the complaint; it being further alleged that there is due by defendants to plaintiff for the first carload $779.04, with interest at 8 per cent. from May 10, 1925, and for the second carload $604, with interest at 8 per cent. from July 10, 1925.

The answer to each cause of action is the same, it being admitted that the goods were sold and delivered, but not under the contract alleged; and it being alleged that defendant tendered payment for the shipments on the basis upon which the same were purchased. The said tender was refused, and the discount referred to in the dealer's contract represented interest charges sought to be enforced, amounting to more than the rate of interest allowed by law in this State.

The case was by consent referred to Paul Moore, Esq., to take and report the testimony. Upon the testimony so taken the cause came on for hearing before his Honor, Judge E. C. Dennis, and upon consent of counsel was marked "heard." Thereafter Judge Dennis heard arguments at Darlington, S. C., and on October 15, 1927, made a decree adjudging that plaintiff was entitled to the full amount claimed in the first cause of action, viz., $779.04, with interest at 8 per cent. per annum from May 10, 1925,

and an additional amount of $100.00 which he found to be a reasonable fee for the plaintiff's attorneys under the written contract; and, on the second cause of action, that plaintiff was only entitled to recover the sum of $516.77, without interest and without attorney's fees. Within due time thereafter notice of appeal was given by the attorneys for plaintiff. Within the time required by law, the defendant's attorneys also served notice of intention to appeal to the Supreme Court.

Both parties except to the decree of Judge Dennis. This is a law case, a jury trial having been waived. It has been decided in a number of cases that under such circumstances the findings of fact will not be disturbed, where there is any testimony to sustain such finding. There was a conflict of evidence, and finding of Judge Dennis must stand; we see no error of law.

All exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER, and MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE concur.

MR. JUSTICE COTHRAN concurs in part, and dissents in part.

MR. JUSTICE BLEASE (concurring) : This is purely a *law* case, and this Court is absolutely bound by the findings of fact of the Circuit Judge. We think Judge Dennis, considering both law and facts, without regard to technical legal distinctions, decided the case in accord with substantial justice. His verdict, probably, was just about the one which a jury would have rendered. So we favor affirmance of his judgment.

MR. JUSTICE COTHRAN : I respectfully dissent in part from the opinion proposed by the Chief Justice, for the reasons which follow:

The action is for goods sold and delivered; the complaint contains two separately stated causes of action:

1. For the amount due upon the sale and delivery of a carload of fertilizer, shipped by the plaintiff to the defend-

ant partnership, on April 18, 1925, $779.04, with 8 per cent. interest from May 10, 1925.

2. For the amount due upon the sale and delivery of a carload of fertilizer, shipped by the plaintiff to the defendant partnership, on June 2, 1925, $604.00, with 8 per cent. interest from July 10, 1925.

The plaintiff contends that both shipments were made under a written contract, styled "Dealer's Contract," dated March 3, 1925, agreed to by the defendants on March 30th, and confirmed by the plaintiff on April 15th.

The defendants admit the sale and delivery of both carloads, but deny that either was shipped under that contract.

By consent the case was referred to Paul Moore, Esq., as Special Referee, simply to take the testimony and report it. He did so, and the matter came up for trial before his Honor, Judge Dennis, upon the testimony so reported.

On October 15, 1927, his Honor filed a decree adjudging, without discussing the evidence, and without any particular findings of fact, that upon the first cause of action the plaintiff was entitled to judgment for the amount claimed, $779.04, with interest from May 10, 1925, and $100.00 attorney's fees, and, upon the second cause of action, that the plaintiff was entitled only to $516.77, without interest and without attorney's fees.

From this decree both sides have appealed; the defendants from so much of it as allowed judgment for the full amount claimed on the first cause of action; and the plaintiff, from so much of it as disallowed the full amount claimed on the second cause of action.

Inasmuch as the Circuit decree contains no specific findings of fact (only conclusions from the evidence), it can only be assumed that his findings were of such facts as were the necessary bases of his conclusions.

As he found that the plaintiff was entitled to the full amount claimed on the first cause of action, he necessarily concluded that the first carload was shipped under the con-

tract; and his finding, that the plaintiff was not entitled to the full amount claimed under the second cause of action, naturally would imply that the second carload was not; an implication, however, not sustained, as we shall see. The defendants' appeal involves the correctness of the first implied finding, and the plaintiff's that of the second.

This being a law case, and both appeals involving at least implied findings of fact by the Circuit Judge, both parties, the defendant in reference to the first cause of action, and the plaintiff to the second, are concluded by such findings, unless it can be shown from the admitted facts of the case that no other inference can reasonably be drawn than that the Circuit Judge was in error. In such event the question becomes one of law, and the conclusions of the trial Judge may be reviewed and reversed by this Court.

It appears that shortly before March 3, 1925, negotiations were opened between the defendants and one McNair, traveling salesman for the plaintiff, Acme Company, looking to a purchase and sale of certain fertilizers for the season of 1925; the company prepared the form of what is designated "Dealer's Contract"; it was dated March 3d; the form was to be presented to the defendants for their approval, and was to be binding "only when confirmed in writing" by the company; the general purport of the proposal was thus expressed: "For the spring season of 1925 we (Acme Company), agree to consign to you (defendants), such amounts and kinds of fertilizers *as from time to time shall be mutually agreed upon,* to be sold by you as our dealer for our account, upon the terms and conditions hereinafter provided, and at not less than the retail consumers' prices set opposite the respective brands."

Under the terms of the proposed contract in addition to the provision that the dealers were to take planters' notes for fertilizer sold in the name of the company, and to be held in trust for the company, it was provided that the dealers should make settlement for goods fur-

nished on the 10th day of each month by cash or note for the preceding month's deliveries; these guaranty notes to bear interest at 8 per cent. per annum from April 10th, with the privilege of anticipating them and being credited with certain discounts on account thereof.

It was also provided that upon the sales account the dealers should be allowed the following discounts: "(a) For cash on the 10th day of each month for preceding month's deliveries, a discount of ten (10%) per cent. on consumer's retail price will be allowed; (b) For cash with order or sight draft with bill of lading attached a discount of three (3%) per cent. flat will be allowed in addition to ten (10%) per cent. flat, as stated in clause (a) above, which will make the total discount for S. D. B. L. (sight draft with bill of lading attached), or cash with order thirteen (13%) per cent. flat."

It was also provided: "All fertilizers * * * in excess of quantities above set forth or other than above described, ordered by you, or shipped by us to you * * * are to be considered as included in and covered by all terms and conditions of the contract, as fully as if expressly referred to herein. * * *"

This proposal, signed by the company, was presented to the defendants by McNair, and signed by them on March 30th, under the following printed form, addressed to the company: "I (or we) have read and considered the foregoing contract to handle, as your dealer, on consignment, your fertilizers as specified therein, and in consideration of the compensation which I am (or we) are to receive as named and set out in the above contract I (or we) agree to all the terms, obligations and conditions therein set forth."

With the proposal, signed by the company and by the defendants agreeing to its terms, and transmitted by McNair to the company for its confirmation as provided, there was inclosed, in the same envelope, the following paper signed by the defendants, dated Van Wyck, S. C., March 30, 1925:

"Acme Manufacturing Company, Wilmington, N. C.—Gentlemen: You will please ship for the undersigned on * * * Contract with you, as follows:

Consignee: Massey-Yoder Co.

Destination: Van Wyck, S. C.

S. A. L. 2176

| Tons | Brand | | Analysis |
|---|---|---|---|
| 5 | Acid Phos. | | 16% |
| | 40.28 | 31.15 | |
| 5 | Quick Step (CSM) | | 8—4—4 |
| | 35.40 | 27.33 | |
| 5 | Acme CSM Guano | | 8—3—3 |
| | Ship open | | 136.65 |

"Will pay on arrival.

"Remarks: Ship Apl. 10th and oblige."

And on April 8th, the defendants wrote the company:

"Referring to order given Mr. McNair for 150 bags (15 tons) fertilizer, you will please add to this order 50 bags (5 tons) of 8—3—3."

On April 15th, the company signed its confirmation of the proposal, and mailed to the defendants a duplicate thereof, with a letter notifying them that they expected full compliance with the terms of what was then a contract, adding: "It will be well for you to send in your orders as promptly as possible so as to avoid the rush of the season."

On April 18th, the company shipped to the defendants upon their order of March 30th, 15 tons, and on their letter of April 8th, ten tons (why 10, instead of 5, as ordered, is not explained). The 15 tons, at consumers' retail prices, amounted to $487.20; and the ten tons to $378.40. Total, $865.60.

Upon this bill the defendants were allowed under the contract, a flat discount, for dealer's services, etc., of 10 per cent., leaving a balance of ($865.60 less $86.56), $779.04. If the defendants had paid this balance by May 10th, they would have been entitled to a further discount of 10 per

cent., leaving a balance of ($779.04 less $77.90), $701.14; and, if they had remitted cash with the orders, or had paid the draft with bill of lading attached, they would have been entitled to an additional 3 per cent. discount, making 23 per cent. in all ($865.60 less $199.08), $666.52. They availed themselves of none of these options, but are claiming now that this balance of $666.52 is all that they owe.

On May 6th, the company sent the defendants a statement of the April shipments, "for monthly settlement, *as per contract terms,*" and advising them that they would be allowed the discount of 10 per cent., "as set out in the contract," if remittance should be made by May 10th. The defendants did not remit, but wrote on the 14th saying: "We shall get this to you just as quickly as the money is available," adding, "We shall want some *acid* and a little *8–3–3*, also," and inquiring about other brands of fertilizer, particularly *"7–5–5 Top Dresser."*

So much for the April shipments, from which I cannot see the slightest ground for doubt that they were made, and intended to be made, under the contract agreed to by the defendants on March 30th, and confirmed by the company on April 15th, and shipments made on April 18th.

The implied conclusion of fact, to the effect that the shipments were so made, has been sustained, in my opinion, beyond a reasonable doubt; certainly there is at least sufficient evidence to sustain it.

As to the shipment of June 2d, the basis of the second cause of action, I think that the evidence is reasonably susceptible of the inference only, that it, too, was made, and intended to be made, under the March contract.

After writing to the company under date of May 18th, inquiring as to the "7–5–5 Top Dressers," and stating that they would need "some more Acid and a little more 8–3–3 also," the shipments to be made "now, with June 10th settlement," the defendants placed an order with the company, dated May 28th, for the very classes of fertilizers referred

to in their letter of 18th, and which was to be settled for with the June settlement, fixed by the contract, consisting of 6 tons of *Acid,* 9 tons of *7–5–5 Top Dresser,* and 4 tons of *8–3–3.* It is inconceivable that this order was intended as otherwise than as covered by the terms of the contract. The fact that, in his letter of July 10th, he tendered a check for $516.77, is conclusive of the fact that he was then claiming under the contract, as thus appears:

| | | |
|---|---|---|
| The invoice | | $ 671.13 |
| Less 10 per cent | $ 67.11 | |
| Less 10 per cent. additional | 67.11 | |
| Less 3 per cent. additional | 20.14 | 154.36 |
| | | $ 516.77 |

It was upon the bill of $604.02 that the Circuit decree adjudges that the company was entitled to only $516.77, without interest and without attorney's fees. It is clear that this amount was ascertained by the same process as was employed by the defendants, which appears from an analysis from a different viewpoint, thus:

| | |
|---|---|
| Invoice less 10 per cent | $ 604.02 |
| Amount allowed | 516.77 |
| Difference | $ 187.25 |

This difference figures exactly 13 per cent. of the $604.02, which demonstrates that the defendants were allowed the flat dealer's discount of 10 per cent. for services, an additional 10 per cent. for payment according to engagement, and an additional 3 per cent. for cash or sight draft; for 23 per cent. (10, 10, and 3) of the consumers' retail price, $671.13, amounts to $154.36, the exact amount of the difference $87.25 plus the original 10 per cent., $67.11, $154.36.

The decree, therefore, practically holds that the shipments *were covered by the March contract,* and, while it gives the defendants the benefit of the discounts provided in the contract, it does not hold them to the *conditions* of the contract by which the discounts were to be earned.

The second order written by Massey-Yoder Company on its own stationery, in the absence of any representative of Acme Manufacturing Company, made no reference to cash payment, and, on the contrary, specified that payment would be made more than 30 days after the date of shipment. No reference, at any time previous to June 10th, is made to a purchase aside from and not under the provisions of the dealer's contract. In other words, with a written dealer's contract in the office of Acme Manufacturing Company, with a written approval of this contract in the hands of Massey-Yoder Company before any shipment was made, this written approval specifically directing attention to the fact that all of the terms of the dealer's contract would be considered binding, two shipments of fertilizer were made, and no reference at any stage to these shipments not being made under the contract is found in the record until after both shipments had been received and after all rights under the contract as to the discounts claimed had been lost.

The entire written record is in favor of the contention of Acme Manufacturing Company. All of the oral testimony tends to support this testimony, except the mere statement of Mr. C. R. Yoder, that these goods were to be shipped on a cash basis in a reasonable time after the arrival of the goods.

This testimony was objected to on the ground that it tended to vary the terms of the written dealer's contract, which Mr. Yoder admitted that he had signed before any of the goods were shipped. With a contract in existence, specifying, as this one does in Section 14, that all fertilizers *in excess of the quantities mentioned therein,* or other than those described therein "ordered by you or shipped by us to you * * * are to be considered *as included in and covered by all terms and conditions of this contract as fully as if expressely referred to herein,"* it is difficult to understand why a party to that contract should be permitted to absolutely contradict it in his oral testimony. If this testimony is excluded, there is absolutely no foundation

for the contention that the dealings between the parties are not necessarily to be governed by the terms of the written agreement.

The testimony should have been excluded, and Judge Dennis, in effect, excluded it, notwithstanding the fact that he misconstrued the rights of the parties as to the second shipment, and allowed judgment as to that shipment for only the amount which would have been payable if the alleged verbal contract had applied to this particular shipment. Williston, Contracts, §§ 632, 633; *Mallard v. Duke,* 131 S. C., 175, 126 S. E., 525; 22 C. J., 1177, 1179; 10 R. C. L., 1016; *Cape Fear Co. v. Evans,* 69 S. C., 99, 48 S. E., 108; *Carolina, C. G. & C. R. Co. v. Seigler,* 24 S. C., 129; *Forbes v. Pearson,* 87 S. C., 69, 68 S. E., 964; *Coates v. Early,* 46 S. C., 229, 24 S. E., 305.

I cannot think that the learned counsel for the defendants are serious in their contention, set forth in the second defense, to the effect that the discounts set forth in the dealer's contract represent interest charges amounting to more than the legal rate of interest; because the rule is too well settled to require even the citation of authority, that the owner of property has a perfect right to name the price on which he is willing to sell, and may offer to sell at a designated price for cash, or at a much higher price on credit. This doctrine is laid down in 27 R. C. L., 214, with many cases from the United States Supreme Court and various jurisdictions supporting it, as follows: "On principle and authority, the owner of property whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices unless the buying and selling was a mere pretence."

The defendants did not even undertake in this case to prove that there was no *bona fide* sale, and all of the testi-

mony shows that it was an outright sale with certain discounts for cash.

The case of *Osborne v. Fuller*, 92 S. C., 338, 75 S. E., 557, 42 L. R. A. (N. S.), 1058, illustrates the difference between a *bona fide* contract such as is involved here, and the charging of usurious interest. The Court, after showing clearly that a usurious transaction was involved in that case at page 340 of 92 S. C. (75 S. E., 557), says: "It is true that there is no limit to the price an owner of property may place upon it, or to the difference he may choose to make between cash and credit."

From the foregoing quotation it is apparent that the rule in South Carolina is the same as the general rule as laid down in Ruling Case Law, and, under the testimony in this case, the defense predicated upon this being a usurious contract is wholly without merit. .

The point has not been raised in the case, but I have serious doubts whether the defendants were entitled to the original discount of 10 per cent. provided for in the contract. The provision is as follows: "For and in consideration of your selling our fertilizers and guaranteeing payments in full, as set forth in Paragraphs (5), (6) and (7), and doing, performing and satisfying all other obligations and undertakings on your part agreed to be done and performed, we agree, upon the full and complete performance and satisfaction of the same on your part, to allow you, as full and complete compensation for either cash or time sales, a sum equal to ten (10%) per cent. flat on retail consumers' prices designated hereunder. * * * " The evidence overwhelmingly shows that the defendants did everything but comply with the terms upon which this discount was allowed.

In my opinion, the judgment of this Court should be that the decree should be affirmed as to the first cause of action, and that the case should be remanded to the Circuit Court, with directions to enter a judgment in favor of the plaintiff

for the full amount claimed in both causes of action, the Court determining what would be a reasonable fee for the plaintiff's attorneys in the second cause of action.