13335

TIMMONS v. WILLIAMS WOOD PRODUCTS CORPORATION *ET AL.*

(162 S. E., 329)

*Mr. L. D. Jennings,* for appellant,

*Messrs. M. M. Weinberg* and *T. H. Brice,* for respondents,

January 27, 1932.

The opinion of the Court was delivered by J. HENRY JOHNSON, CIRCUIT JUDGE, ACTING ASSOCIATE JUSTICE.

Action for personal injuries sustained by appellant, an infant of tender years, from the falling of a door in the home of her father, which had been rented for himself and family from respondents. Demurrer by the latter for insufficiency, sustained by the trial Court in a formal order dismissing the complaint; appeal by plaintiff.

The material facts alleged, and, for the purposes of appeal, admitted by the demurrer, are substantially these: Defendants are a domestic corporation and its general manager, the latter of whom was charged with the duty of keeping in repair the demised premises occupied by plaintiff as a member of the tenant's family; plaintiff is an infant under the age of seven years, and resides with her father, R. D. Timmons, who for himself and family, leased from respondents a residence in Sumter County, which, it was agreed, at the time of the letting, respondents were to keep in repair at all times during the tenancy; prior to plaintiff's injury, respondents were notified by the lessee that the hinges on one of the doors of the house were in a defective condition, and that, unless repaired at once, such door was apt to fall and

cause injury, whereupon they agreed to repair the same immediately; ample time for the correction of such condition elapsed, but there was a failure to remedy; again respondents were notified that the hinges were loose, again they promised to repair, again they neglected to undertake to correct the evil, and finally the door fell, striking one of plaintiff's feet and completely severing therefrom the large toe; plaintiff was permanently injured and disfigured—allegedly as a consequence of respondents' negligent and willful failure, after notice, to repair in accordance with their contract so to do.

Respondents thus enumerate the issues here raised:

(1) Does the complaint show any breach of legal duty owed appellant?

(a) Is there any consideration stated for the alleged covenant?

(b) Is a landlord liable in damages for a breach of covenant to repair to a stranger thereto?

(2) Are the damages alleged such as can be recovered in an action for a breach of a covenant to repair?

(3) Is the breach of the alleged covenant to repair the proximate cause of the injury alleged in the complaint?

More concisely stated, the inquiry is whether or not, under applicable principles of law, subject to that liberal construction accorded to pleadings since the adoption of the Code, the complaint states a cause of action; if so, whether the same be on contract or in tort; and, if the former, whether or not damages for personal injuries are properly recoverable therein.

Certainly it is well settled in this jurisdiction, as elsewhere, that, in the absence of a valid contract on the part of the lessor so to do, there is no obligation on his part to keep the demised premises in repair. *City Council v. Moorehead,* 2 Rich. Law, 430; *Cantrell v. Fowler,* 32 S. C., 589, 10 S. E., 934; *Williams v. Salmond,* 79 S. C., 459, 61 S. E., 79; *Mallard v. Duke,* 131 S. C., 175, 126 S. E.,

525, 36 C. J., 125, § 766. This can mean nothing less than that the relationship of landlord and tenant imposes no legal duty upon the former to repair. "The lessor turns over the property, and the lessee takes it as it is turned over to him. Any obligation to put the property in repair * * * must be imposed by some contract apart from the mere lease of the land for a given term." *Williams case, supra.*

Likewise, it must be conceded, as a necessary corollary, that "a landlord who, without covenanting to repair, and without knowledge of latent defects, puts a tenant into full possession and control of demised premises, not intended for public purposes, and which are free from defects of construction constituting a nuisance, will not be liable for personal injuries sustained on the demised premises, by reason of the defective condition thereof, by the tenant, members of his family, employees, guests or invitees, or others entering upon the premises under the tenant's title." 36 C. J., 204, §.874, and numerous authorities there cited.

And it cannot be denied that, although the learned Circuit Judge assigned no reasons for sustaining the demurrer below, the overwhelming weight of authority elsewhere supports his ruling, it being most frequently held that "parties to a tenancy may agree that the landlord shall make necessary repairs and thus vary the rights and obligations imposed by law from the relation, but an agreement to repair as a part of the letting is an agreement to make repairs on notice, and failure to comply will, as a general rule, give rise merely to a right of action for breach of contract, under which damages are not recoverable for personal injuries sustained by reason of the defective condition of the premises"—either by the tenant, or by a member of his family. 36 C. J., 208, § 881; *Jacobson v. Leaventhal,* 128 Me., 424, 148 A., 281, 68 A. L. R., 1192, annotation at 1195, 1203, 1204; *Collison v. Curtner,* 141 Ark., 122, 216 S. W., 1059, 8 A. L. R., 760, annotation at

766, 774, 779; *Dice v. Zweigart,* 161 Ky., 646, 171 S. W., 195, L. R. A., 1916-F, 1155, annotation at 1159; *Thomas v. Lane,* 221 Mass., 447, 109 N. E., 363, L. R. A., 1916-F, 1077, annotation at 1081; annotations at L. R. A., 1916-D, 1227; 48 L. R. A. (N. S.), 919; 34 L. R. A. (N. S.), 804; 11 L. R. A. (N. S.), 504.

The rationale of the majority rule proceeds upon the premise that the relationship of landlord and tenant, of itself alone, imposes no duty upon the former to repair, which is in accord with the principle announced in our own cases, *Cantrell v. Fowler, Williams v. Salmond, Mallard v. Duke,* all *supra;* that, in the absence of a contract to repair, the tenant takes leased premises for better or for worse, with no positive, legal duty on the part of the lessor to make repairs; that such an obligation or duty "must be imposed by some contract apart from the mere lease of the land for a given term," as held in the *Williams case, supra;* that, since such duty arises solely by virtue of a particular covenant in a contract of letting, the breach thereof gives rise merely to an action *ex contractu,* wherein such damages only are recoverable as are ordinarily incident to any other breach of contract, to those which reasonably may be said to have been within the contemplation of the parties when the contract of letting was made, and that damages for personal injuries are merely consequential and too remote, reasonably to have been within contemplation of the contracting parties; that the duty to repair in such cases, being wholly contractual, imposes no greater or different liability upon a landlord than is imposed upon a carpenter, contractor, plumber, or other mechanic who may contract with a tenant, or with the owner of a home, to make needed repairs, and who fails to perform his contractual duty; that, where premises are demised solely for private purposes, as for a residence, and the tenant is put in exclusive possession and control thereof, he thereby acquires, for specified term, or at will, an interest in real property, agreeable to the common-law rule that a lease is a convey-

ance of an estate or an interest in real property, or a transfer of the right to the possession and enjoyment of real property for the period fixed by the lease—the demised premises become, for the time being; the property of the tenant, who may admit, or deny entrance to, whomsoever he pleases; that an action *ex delicto* will not lie for the breach of a mere contractual duty to repair because a "tort is a civil wrong other than a breach of contract"; that "actional negligence" is the neglect to perform a legal duty, as distinguished from the failure to perform a mere contractual duty; and that, so far as members of the tenant's family are concerned, their rights are necessarily measured by those of the tenant.

The soundness of the refusal to permit recovery for personal injuries under such circumstances is fortified, it would seem, by reason of the fact that, if the premises become dangerous to life or limb, the tenant, rather than expose himself and the members of his household to such dangers, may, upon failure of the lessor to perform his engagement to repair, (1) rescind the contract and abandon the premises; (2) make the repairs himself and deduct the expense thereof from the rent, or recover the same upon a counterclaim in an action for rent (*Cantrell v. Fowler, supra*); (3) occupy without repair, and recoup such damages as are ordinarily incident to a breach of contract by counterclaim in the landlord's action for rent, as was done in *Cantrell's case;* or (4) sue for damages for breach of contract. *Jordan v. Miller,* 179 N. C., 73, 101 S. E., 550; *Cromwell v. Allen,* 151 Ill. App., 404.

Our own cases throw but little light upon the precise issue under investigation. The nearest in point is that of *Parnell v. Saxe-Gotha Mills,* 109 S. C., 369, 96 S. E., 187, wherein the tenant's wife sought to recover for personal injuries allegedly suffered as a result of the landlord's breach of contract to furnish tenant with "the necessary material and appliances" wherewith the latter was "to place said house in a safe and habitable condition." A demurrer to the

complaint was overruled by the trial Court, and, in reversing the judgment below, this Court declared: "There is no allegation of a contract to repair. If there was any evidence to sustain a contract to repair, the question of liability for the breach of such a contract would arise, but the evidence shows no contract to repair. * * * At best it was only a contract to furnish materials, the breach of which was not the proximate cause of the injury," and attention was directed to the fact that the complaint alleged that "the direct and proximate cause of the fall of the house and the resulting injury was the 'dangerous and unsafe condition of said house.'" It will be observed that the Court gave no indication whatever of how it would have determined "the question of liability for the breach of such a contract."

In *Cantrell v. Fowler, supra,* the action was *ex contractu,* by the landlord against the tenant for rent reserved, wherein the latter pleaded separate counterclaims for damages to his merchandise from a leaking roof, and for goods sold by him to his lessor, and all that was there decided was that, "in the absence of any contract on the part of the landlord to repair, he was not bound to make any repairs," although the same may have been substantial, necessary and lasting; and that, upon breach of the landlord's contract to repair, it was the duty of the tenant to minimize his damages by making the repairs himself, if necessary, and charge the expense thereof to his landlord against the rent.

In *Williams v. Salmond, supra,* the action was likewise *ex contractu* by the tenant against the landlord for the latter's failure to repair in accordance with the contract, and it was held that "a contract to lease land imposes no obligation on either the lessor or the lessee to put the property in repair. * * * The lessor turns over the property, and the lessee takes it as it is turned over to him. Any obligation to put the property in repair * * * not only may be, but must be, imposed by some contract apart from the mere lease of the land for a given term." The particular point de-

termined in that cause, however, was that "the parties may incorporate such contract to put in repair   *   *   *   in the instrument that embodies the lease contract, but it is not necessary for them to do so   *   *   * ;   and hence a separate contract, either parol or written, made as an additional consideration to the lease contract, may be proved and relied on either as a defense or as a cause of action." And the distinguished justice who wrote that opinion was careful to point out that "the consideration imported by a plain lease contract   *   *   *   is on the one side the rent to be received and on the other the use of the land rented," and that there must be a valuable consideration for the agreement to repair, whether the latter be incorporated in the contract of letting, or undertaken at some other time.

While not directly in point here, these decisions firmly establish the principle that there is no legal duty imposed upon a landlord merely by reason of the creation of the relationship of landlord and tenant, and that the duty to repair, if it exist in any case, must arise solely out. of, and by virtue of, the contract itself. As far as they go, therefore, they are in full accord with the principles relied upon in the majority rule, which latter proceeds but one step further, and declares that, upon breach of the contractual duty to repair, an action *ex contractu* accrues to the aggrieved tenant, rather than one in tort.

It would seem, therefore, that the primary, if not the controlling, issue for determination is whether or not the complaint at bar states a cause of action on contract or in tort. Its allegations may be said to be somewhat appropriate to either form of action, although the pleader declares in the sixth paragraph thereof that the injury was occasioned by the failure to fix the hinges "in accordance with their promise to keep said house in repair." In any event, however, "allegations of negligence will not convert a breach of contract into a tort." *Citizens' Nat. Bank v. Hawkins,* 140 S. C., 43, 138 S. E., 541, 542; *Farmers'*

*Union Co. v. Anderson,* 108 S. C., 70, 93 S. E., 422. "And if it is doubtful whether the action is on contract or in tort, the doubt should be resolved in favor of the former." *Bank v. Hawkins, supra; Randolph v. Walker,* 78 S. C., 157, 59 S. E., 856, 858. "The averment of a promise, or consideration, or other element or usual incident of contract, has been held significant in giving character to the action as *ex contractu.* * * * The generally accepted rule is that, in doubtful cases, every intendment is in favor of regarding the action *ex contractu." Randolph's case, supra.*

Measured by these rules of construction, and by the universally accepted definitions of "tort" and "actionable negligence," there is no logical escape from the determination that, for the breach of a landlord's contract to repair, the remedy is by an action *ex contractu,* and that the cause of action here declared upon is for the breach of such a covenant.

It is elementary, however, that, for breach of contract, only such damages are recoverable as reasonably may be said to have been within contemplation of the contracting parties when the contract was entered into; and that punitive damages may not be awarded under such form of action unless the breach was accompanied by a fraudulent act, as distinguished from a mere fraudulent intent. *Donaldson v. Temple,* 96 S. C., 240, 80 S. E., 437, correcting *Givens v. Electric Co.,* 91 S. C., 424, 74 S. E., 1070. Nor may such damages be recovered even where there is a "reckless, wilful and wanton breach" of contract. *Donaldson's case.* A casual inspection of the complaint forces the conclusion that punitive damages are sought to be obtained thereunder, but there is no allegation of a breach accompanied by any fraudulent act on the part of defendants.

The authorities heretofore adverted to, with a single exception hereinafter noted, consistently declare that damages for personal injuries are merely consequential, and too remote, reasonably to be adjudged to have been

within the anticipation of the parties to the covenant. Annotations at 68 A. L. R., 1204, 8 A. L. R., 779, 36 C. J., 209, § 881; *Jordan v. Miller,* 179 N. C., 73, 101 S. E., 550; *Hamilton v. Feary,* 8 Ind. App., 615, 35 N. E., 48, 52 Am. St. Rep., 485, 11 L. R. A. (N. S.), 505 note; *Dice v. Zweigart,* 161 Ky., 646, 171 S. W., 195, L. R. A., 1916-F, 1155; *Jacobson v. Leaventhal,* 128 Me., 424, 148 A., 281, 68 A. L. R., 1192; *Tuttle v. Gilbert, etc.,* 145 Mass., 169, 13 N. E., 465, 11 L. R. A. (N. S.), 506, note.

Of all the Courts which declare the remedy to be by action *ex contractu,* that of Alabama alone has, in cases out of the ordinary, permitted the recovery of damages for personal injuries sustained by a party to the contract, but even there such damages are allowed only when the very purpose and intent of the covenant was to prevent injury from an existing defective condition likely to cause the same, and of which both parties to the contract had notice at the time of the making of the landlord's engagement to repair, it being held that, under those circumstances, accompanied by the tenant's threat to abandon the premises if repairs were not made, personal injuries were necessarily within the contemplation of the contracting parties. *Hart v. Coleman,* 201 Ala., 345, 78 So., 201, L. R. A., 1918-E, 213. And members of the tenant's family cannot recover in any event in that jurisdiction, unless they were, in fact, parties to the contract, the rule being that a member of the tenant's family cannot maintain an action for breach of the contract made between the landlord and the tenant when the benefit to the plaintiff was only incidental and indirect. *Brown v. Fogarty,* 221 Ala., 283, 128 So., 376, on rehearing.

In the complaint before us it is alleged that the tenant rented the premises "for himself and his family," and conceding, for the sake of argument (as Alabama does not), that one for whose incidental and indirect benefit a contract is made may maintain an action thereupon for the recovery of such damages as may be said to have been within

contemplation of the contracting parties at the time of the making thereof, there are no facts averred in the complaint here to show that, when the contract of letting was entered into, and the contemporaneous covenant to repair made, either the landlord, or the tenant, or any member of the latter's family, then had any notice or knowledge of the unsafe condition of the demised premises sufficient to warrant a judicial declaration that damages for personal injuries were reasonably within contemplation of the parties; and, as to the subsequent promises to repair, they were without consideration and *nudum pactum. Atlantic Joint Stock Land Bank v. Latta,* 164 S. C., 56, 162 S. E., 68, opinion by Chief Justice Blease, filed January 12, 1932.

If the action be upon contract, it necessarily follows that the rights of members of the tenant's family, his guests and employees, against the lessor, are no greater than the rights of the tenant—if the latter cannot recover for personal injuries because they are too remote, neither can the former. Annotation at 8 A. L. R., 767-769.

The minority rule, permitting an action in tort, is grounded solely upon the reasoning that "the action is for the wrong committed by the landlord by his negligence in failing to perform an act assumed by him, which he should know would protect * * * from injury if performed, or expose * * * to injury if not performed," it being said that "the contract creates an implied legal duty on the part of the landlord toward those who are rightfully upon the premises, and a negligent violation thereof vests in them a right of action in tort against him for injuries sustained." *Keegan v. Heileman Brewing Co.,* 129 Minn., 496, 152 N. W., 877 L. R. A., 1916-F, 1149; *Merchants, etc., Co. v. Miller,* 135 Tenn., 187, 186 S. W., 87, L. R. A., 1916-F, 1137; *Pollack v. Perry* (Tex. Civ. App.), 217 S. W., 967; *Flood v. Pabst Brewing Co.,* 158 Wis., 626, 149 N. W., 489, L. R. A., 1916-F, 1101.

The fallacy of such reasoning, however, is manifest when it is noted that those Courts resort to the fiction of implying

a legal duty to perform a mere contractual duty which the landlord has already expressly covenanted to perform, and of declaring, in effect, that the tenant may shelve the express contract and recover in tort for breach of the implied legal duty arbitrarily substituted by the Court for his contractual duty. See *Dally v. Vogl,* 187 Mo. App., 261, 173 S. W., 707-709; *Tuttle v. Gilbert, etc., supra*. If an implied legal duty, for breach of which an action *ex delicto* will lie, may be substituted by the judiciary for a landlord's express contract to repair, it follows logically and inevitably that, upon the execution of any other contract, an implied legal duty will arise, and that, upon breach of the contract by either party thereto, the aggrieved party may disregard the contract and sue in tort, thereby destroying the fundamental distinction between actions *ex contractu* and those sounding in tort.

We are forced to the conclusion, therefore, that, for breach of a landlord's covenant to repair, under the facts made by the instant cause, the remedy is by action on the contract, under which damages for personal injuries may not be recovered.

The views expressed make it unnecessary to consider the third ground of demurrer, but it may be stated that, if the action were otherwise maintainable, plaintiff, by virtue of her tender years, was incapable of contributory negligence. *Sexton v. Noll Construction Co.,* 108 S. C., 516, 95 S. E., 129. Likewise, the negligence, if any, of her father, could not be imputed to her in this action. *Cirsosky v. Smathers,* 128 S. C., 358, 122 S. E., 864.

It may not be amiss to add that the conclusions herein announced are confined strictly to the admitted facts and to point out that they are not in conflict with *Medlock v. McAlister,* 120 S. C., 65, 112 S. E., 436, where recovery for personal injuries was allowed to a tenant injured by a defective, unsafe, and negligently operated elevator, since it is universally held, in accordance with the doctrine there announced, that a landlord is liable to a negligently injured

tenant, his employees, invitees, and others lawfully using an elevator furnished for the convenience of the tenant when the former retains the management and control of the same. 36 C. J., 215, § 894. Because possession and control are reserved unto the lessor, the law implies an obligation, creates a legal duty, to keep the same in repair, and to operate it properly. This is in accord with the general rule that there is an implied duty on the part of the landlord to keep in repair all portions of demised premises of which he reserves possession and control for the common use of several tenants, and is peculiarly applicable to halls, stairways, elevators, and other approaches of which no particular tenant has exclusive possession and control. 36 C. J., 212, 213.

Because the question for determination is one of novel impression in this jurisdiction, this opinion has perhaps been unduly prolonged, but a careful and exhaustive study convinces us that, with rare exceptions, all of the cases which permit recovery for personal injuries to the tenant, or to a member of his family, are bottomed (1) upon breach of a statutory duty; (2) where injury results from a defective condition known to the landlord and concealed by him from the tenant; (3) where injury is occasioned by a defect in a portion of the premises reserved by the landlord for the common use of all his tenants; (4) where injury occurs from the defective condition of premises furnished by the landlord for use of the public generally, as theaters, docks, etc.; (5) when the covenant is to keep the premises safe during the term; or (6) where the lessor actually undertakes to make the needed repairs and negligently does so—where there is misfeasance as distinguished from nonfeasance.

It is the judgment of this Court that the order appealed from be, and the same hereby is, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER, CARTER and BONHAM concur.

MR. JUSTICE COTHRAN did not participate on account of illness.