18109

Lucia Pearl CONNER, Respondent, v. FARMERS AND MERCHANTS BANK, as Executor of the Estate of Mattie C. Hall, Appellant.

(132 S. E. (2d) 385)

134

*Messrs. Williams & Johnson* and *Henderson, Salley & Cushman*, of Aiken, *for Appellant,*

*Frank H. Cormany, Esq.,* of Aiken, *for Respondent,*

*Messrs. Williams & Johnson* and *Henderson, Salley. & Cushman,* of Aiken, *for Appellant, in Reply,*

August 29, 1963.

LEWIS, Justice.

The plaintiff, lessee, was awarded a verdict for actual damages against the defendant, as executor of the estate of the lessor, for personal injuries sustained from a fall on the leased premises. The plaintiff's fall was allegedly caused by a defective condition in the premises created through the negligent repair thereof by the lessor. From the denial by the lower court of timely motions by the defendant for a directed verdict in its favor, for judgment *non obstante veredicto* and, in the alternative, for a new trial, the dedendant has appealed. The issues arising under the appeal from the denial of defendant's motion for judgment *non obstante veredicto* relate to alleged error of the trial court in refusing the defendant's motion for a directed verdict, made upon the grounds that (1) the plaintiff failed to prove actionable negligence on the part of the defendant, and (2) if such was shown, the only reasonable inference to be drawn from the testimony was that plaintiff assumed the risk which caused her injury and was guilty of contributory negligence as a matter of law. The appeal from the refusal to grant the defendant's alternative motion for a new trial involves several alleged errors in the charge to the jury and in rulings of the trial court as to the admissibility of certain testimony.

Of course, in determining the sufficiency of the evidence to warrant submission of the issues to the jury, we must view the testimony and the reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. The defendant offered, in effect, no testimony and the basic facts are not in dispute.

Mrs. Mattie C. Hall, deceased, owned an apartment house in Aiken, South Carolina, in which the plaintiff, Mrs. Lucia Pearl Connor, eighty-two years of age, had rented a ground floor apartment for several years under a rental agreement whereby the lessor agreed to keep the premises "safe and comfortable." Just inside the front door, and only outside

entrance to plaintiff's apartment, there was a floor area, approximately 5' x 7', of brick, which served as a walkway or entrance area to the remainder of the apartment. A driveway from the street served this apartment building and others in the area. The driveway approached the apartment on a decline and had effect of channeling surface water during rains toward the plaintiff's apartment. In May, 1959, due to erosion in the front yard, surface water from the driveway began to drain into and under the apartment. The lessor did some work in the yard in an attempt to alleviate the situation, but the work done was inadequate and water continued to drain into and under the apartment to such an extent that in August, 1959, a section of the brick floor settled six to seven inches below the normal floor level. In September, 1959, the lessor undertook the repair of the brick floor, but too much sand was added to the mortar used between the brick, causing the mortar to easily crumble. After these repairs were made, due to the fact that the work done by the lessor in the yard was inadequate, surface water continued to drain into the plaintiff's apartment. In addition to the entry of surface water, a considerable leak developed in September, 1960 at an attic window, which caused additional water to flood the brick area.

During rains, water entered in such quantity that it required mopping and sweeping the brick floor to keep it from flooding the remainder of the apartment. Since the lessor had used too much sand in the mortar in repairing the floor in September, 1959, the mortar crumbled and was easily dislodged from between the brick. As a consequence, water which flowed onto the brick area, together with the mopping and sweeping to keep it from flooding the remainder of the apartment, gradually carried the crumbling mortar away, leaving openings or crevices between the brick, which, at the time of plaintiff's injury, were approximately three-quarters of an inch in depth. The record fails to show any definite time as to when the openings reached a depth that made it hazardous to walk over the brick area, but the

plaintiff described the period of time as "quite a while" before her fall.

The lessor frequently visited the plaintiff's apartment, knew the condition of the brick area, and repeatedly promised to correct it. In fact, there is testimony that on some of the visits of the lessor to see the plaintiff it was necessary for someone to assist her (the lessor) in crossing over the floor area in question, because of its defective condition.

The plaintiff was 82 years of age. She was of limited income and it was necessary for her to live in an apartment where the rent was in keeping with her means. Her continued residence in the apartment was further necessitated by her need to be near someone who could help in looking after her needs. Her married daughter lived in the adjoining apartment.

The plaintiff was aware of the defective condition of the brick floor and, in walking over it, usually held to a table or some other object to prevent falling. In fact, she had suffered two falls in the apartment prior to the one in question. On September 5, 1961, she decided to go into the yard to sit in the sunshine. It was necessary for her to walk over the area in question to reach the yard and, in doing so, she took her usual precaution of holding to a table to prevent falling. As she proceeded to the door, she noticed that the screen door was slightly open and that her pet parakeet was about to escape, which momentarily distracted her attention and apparently caused her to release the table. With her attention momentarily distracted by the fear that her parakeet would escape, her shoe heel caught in one of the openings between the brick and she fell, sustaining rather serious personal injuries. The lessor died on August 13, 1961, about one month prior to plaintiff's fall, and this action was instituted against the defendant Bank, as executor of the lessor's estate, to recover for the personal injuries so sustained by the plaintiff.

In determining the issues, it is necessary to keep in mind the nature of the cause of action alleged in the Complaint and the applicable legal principles.

Although the complaint alleges an agreement of the lessor to maintain the premises in a safe condition, the action is clearly based upon allegations that the plaintiff's fall and resulting injury was caused by a defective condition in the brick floor, created through the negligent repair of the premises by the lessor, and was brought upon the theory that the lessor was liable in tort for personal injuries resulting from such negligence.

The general rule has been adopted in this State that the relationship of landlord and tenant imposes no legal duty on the part of the former to keep the leased premises in repair, in the absence of a valid contract on the part of the lessor to do so. The parties, however, may vary the legal obligations imposed by law from the relationship of landlord and tenant and agree that the landlord shall make necessary repairs, " 'but an agreement to repair as a part of the letting is an agreement to make repairs on notice, and failure to comply will, as a general rule, give rise merely to a right of action for breach of contract, under which damages are not recoverable for personal injuries sustained by reason of the defective condition of the premises' * * * 36 C. J. 208, Section 881." *Timmons v. Williams Wood Products Corp.,* 164 S. C. 361, 162 S. E. 329; *Pendarvis v. Wannamaker,* 173 S. C. 299, 175 S. E. 531.

If this were an action to recover for the breach of an agreement to make promised repairs, the application of the foregoing legal principles would deprive the plaintiff of any right to recover for the personal injuries sustained. The delict charged here, however, is negligence on the part of the lessor in making repairs, and not a failure to make repairs as promised. A distinction is drawn in the decisions between the two situations, and it appears to be well established that where a lessor undertakes to repair or improve the leased premises and the work is done negligently, resulting in personal injury to the lessee, the lessor is liable for the damages so sustained. Negligence on the part of the

lessor in making repairs or improvements is regarded as an act of misfeasance, subjecting him to tort liability for any resulting damages. 32 Am. Jur., Landlord and Tenant, Section 679; Annotations: 163 A. L. R. 317; 78 A. L. R. (2d) 1258. The general rule is stated in 32 Am. Jur. 547, Section 678 as follows:

"Although a landlord ordinarily is not liable either to the tenant or his guests or invitees for the safe condition of the leased premises the possession of which he has surrendered to the lessee, it is well established that if he undertakes to repair or improve the demised premises, whether he is under an obligation imposed by a covenant on his part to repair or improve or not, he is required to exercise reasonable care in making such repairs or improvements, and is liable for injuries caused by his negligence or unskillfulness or that of his servants and employees in making them or in leaving the premises in an unsafe condition. The rule applies where the property of the tenant is injured, as well as where personal injuries are received."

While the question here was not involved, our cited cases of *Timmons* and *Pendarvis* recognize an exception to the general rule of nonliability of the landlord for personal injuries resulting from defective conditions in the leased premises in those instances where, as stated in Timmons, "the lessor actually undertakes to make the needed repairs and negligently does so—where there is misfeasance as distinguished from nonfeasance."

The record here shows that the lessor actually undertook to make the needed repairs on the premises leased and occupied by the plaintiff and, under such circumstances, would be liable for any injury or damage resulting to the plaintiff from a failure to exercise due care in making the repairs.

The next question to be decided is whether the evidence gives rise to a reasonable inference of actionable negligence on the part of the lessor resulting in injury to the plaintiff.

The testimony shows that the lessor undertook to stop the drainage of water into plaintiff's apartment and to repair the damage done to the brick floor by

the water. The work done in the yard area to stop the flow of surface water into the apartment was inadequate, and the mortar used between the brick in repairing the floor was soft and crumbly from the addition of too much sand in the mixture. The evidence gives rise to the reasonable inference that both undertakings were improperly and negligently done by the lessor, creating a defective condition in the premises, and that the condition, so negligently created, was a proximate cause of the plaintiff's fall and resulting injuries.

The defendant contends however that, if the lessor was negligent, the plaintiff assumed the risk which caused her injury and that she was guilty of contributory negligence as a matter of law. Insofar as the issues in this case are concerned, the alleged defenses of assumption of risk and contributory negligence may be properly considered together. *Baker v. Clark,* 233 S. C. 20, 103 S. E. (2d) 395.

Ordinarily, the question of contributory negligence is an issue for the jury to determine; and the court will not determine such question as one of law if the conclusion to be drawn from the testimony is doubtful and uncertain. As stated in *Bruno v. Pendleton Realty Co.,* 240 S. C. 46, 124 S. E. (2d) 580, "[i]t is firmly established in this jurisdiction that if the inferences properly deducible from the evidence are doubtful, or if they tend to show both parties guilty of negligence, and there may be a fair difference of opinion as to whose act produced the injury complained of as a direct and proximate cause, then the question must be submitted to the jury."

It is further well established that there is no definite rule by which to determine whether the question of contributory negligence is one of law for the court, or one of fact for the jury. The determination of this question is necessarily controlled by the facts and circumstances of the particular case.

The defendant bases the defense of contributory negligence upon the contention that the plaintiff, with prior knowledge of the defective condition of the floor, failed to

take reasonable precautions to avoid the injury. The plaintiff on the other hand attempts to avoid the defense on the ground that she momentarily forgot the danger which confronted her.

The question of whether or not a plaintiff, charged with prior knowledge of a dangerous condition, can avoid the imputation of contributory negligence by showing that he had momentarily forgotten the danger at the time of the accident is the subject of an excellent annotation in 74 A. L. R. (2d) 950. The subject is also treated in 38 Am. Jur. 863, Section 187 and 65 C. J. S. Negligence § 120, p. 726. From the authorities, certain principles, which we consider sound, may be deduced.

The general rule for determining whether forgetfulness by a plaintiff of a known danger constitutes contributory negligence is no different from the rule applied in other situations, that is, forgetfulness or inattention will amount to negligence if it amounts to a failure to exercise due care. The law recognizes that the person of ordinary reason and prudence sometimes forgets, is sometimes inattentive, and is not perfect or infallible. Therefore, forgetfulness or inattention may be excused when the circumstances are such that a jury could reasonably conclude that a person of ordinary prudence, so situated, might have forgotten.

While forgetfulness of, or inattention to, a known danger may under certain circumstances be excused, it is recognized that a too liberal application of the principle can result in fraud and could completely destroy the defense of contributory negligence. Therefore, it is settled that mere forgetfulness or inattention is insufficient. It is not enough to say "I forgot." Neither is it enough to merely show that there was some diverting circumstance at the time. In order to keep forgetfulness of, or inattention to, a known danger from constituting contributory negligence as a matter of law, the evidence must be such as to give rise to a reasonable inference that the forgetfulness or inattention

relied upon was induced by some immediate, substantial and adequate disturbing cause, to be determined in the light of the exigencies of the situation and the facts and circumstances of the particular occasion.

The facts as they relate to the issue of contributory negligence must be examined in the light of the foregoing principles. The record is clear that the plaintiff knew of the defective condition in the floor of her apartment and was aware of the danger and hazard of falling when walking over it. Because of her awareness of the danger, she usually took the precaution, when walking over the area, of holding to a table or other object to prevent falling. On the occasion of her fall, she testified that she was in the act of walking across the defective area to go into the yard to sit in the sunshine, when she saw the screen door partly open and her pet parakeet about to escape. She was holding on to the table for support as she walked to the door but released the table when she saw the plight of her bird. Her testimony was that, when she saw that her parakeet was about to escape, she momentarily forgot, turned loose the table, and at that time the heel of her shoe caught in an opening between the brick and she fell.

The defective condition in the floor of plaintiff's apartment was caused by the negligence of the lessor in making repairs, and the lessor had repeatedly promised to remedy the situation. Because of plaintiff's age and need of assistance, it was necessary for her to live close to her daughter who could help care for her needs. It is reasonably inferable from the record that because of this fact, the repeated promises of the lessor to fix the floor, and her financial condition, the plaintiff continued to live in the apartment. The only outside entrance to plaintiff's apartment was the front door and the only way to reach it in leaving was to cross over the defective floor area in question. There is testimony that the lessor visited the plaintiff's apartment about two or three times each week, giving rise to the reasonable inference that the lessor was familiar with all of

the circumstances surrounding the plaintiff and her living conditions. This knowledge on the part of the lessor and the repeated promises to remedy the dangerous condition of the floor cannot be separated from the total situation which gave rise to the circumstances and occasion of plaintiff's fall.

The evidence here admits of the reasonable inference that plaintiff started across the defective floor to go outside to sit in the sunshine, exercising proper precautions to keep from falling, and that she involuntarily responded when suddenly confronted with the possible escape of her parakeet. While the issue is undoubtedly a close one, we cannot say that, when plaintiff's attention was momentarily diverted by the possible escape of her pet bird, the only reasonable inference is that she failed to act as a person of ordinary reason and prudence would have acted under the circumstances. The lower court properly held, under all of the facts and circumstances, that the question of contributory negligence was one for the jury to determine.

The remaining issues relate to the assignments of error in the refusal of the trial judge to grant the defendant's motion for a new trial.

The defendant contends that the trial judge erred in charging the jury in substance that "if a person knows of danger and complains and there is a promise to repair by the one whose negligence created the danger, it is for the jury to say if, under the circumstances, the plaintiff acted reasonably in relying upon the promises."

The foregoing instruction must be considered in relation to the remainder of the charge to the jury and the issues to which it was directed. The defendant plead contributory negligence and assumption of risk. One of the main contentions of the defendant was that the plaintiff was guilty of contributory negligence by continuing to live in the apartment with knowledge of the alleged defective conditions of the premises. The questioned instruction was clearly directed to the issues raised by the defendant and, when considered in connection with the entire charge, was proper.

It is next contended that the trial judge erred in admitting testimony as to a contract between the parties to repair and "in charging the jury in relation to the matter of a contract of the landlord to repair," since the case was tried as an action in tort.

We have held that the action was one to recover for damages sustained as a result of the negligent repair of the premises. The agreement to repair was alleged and admitted in evidence, not as a basis of liability, but to show the relationship of the parties and the circumstances under which the lessor undertook to make the needed repairs. The trial judge specifically instructed the jury that the basis of liability of the defendant, if any, was not for a breach of the contract to repair but for negligence in making the repairs undertaken. There was clearly no error in admitting testimony as to the agreement to repair and in instructing the jury as above indicated.

Error is further charged in the refusal of the trial judge to make the following requested instruction to the jury:

"I charge you that if a landlord has contracted to make repairs and, after a reasonable length of time has failed to do so, the tenant should not stand quietly by and voluntarily subject himself to any resulting danger, but ought to make the repairs himself and charge the costs to the landlord unless prohibited by the landlord from so doing."

The foregoing request to charge was apparently based upon the case of *Cantrell v. Fowler,* 32 S. C. 589, 10 S. E. 934. That case involved a counterclaim for damages to the property of the tenant resulting from a breach of an alleged agreement on the part of the landlord to repair. The requested instruction was inapplicable to this case, and, therefore, properly refused, for the obvious reason that this action is based upon the alleged negligent repair of the premises and not upon the refusal or failure to repair. Here, the landlord did not fail to repair, but undertook the repairs and did them in a negligent manner.

Error is also charged in the refusal of the trial judge to charge, at the request of the defendant, that "if a person is by reason of age, or otherwise, partially handicapped or disabled, that there is a corresponding duty upon them to use reasonable care according to his, or her disability."

It is well settled that there is no higher or different standard of care for one who has a physical disability, than for one who is in perfect physical condition. The test to be applied is the conduct of a person of ordinary reason and prudence. While it has been stated that a person under physical disability "should be cautious and prudent in proportion to such defects," *Renneker v. South Carolina Railway Company,* 20 S. C. 219, this simply means that a person under disability is required to exercise that degree of care which a person of ordinary reason and prudence with a similar disability would exercise under the same or similar circumstances. See: 38 Am. Jur. 895, Section 210; 65 C. J. S. Negligence § 142. Annotation: 83 A. L. R. (2d) 771.

In the general charge, the jury was instructed that, in considering the questions of negligence, contributory negligence, and assumption of risk, they should take into consideration all of the circumstances as shown by the evidence in determining whether the plaintiff acted as a person of ordinary care and prudence would have acted. The jury was clearly instructed that the issues must be determined with reference to all of the facts and circumstances in evidence, and the actions of the parties measured by the conduct of the person of ordinary care and prudence. The foregoing afforded the jury a proper test for determining the issues and we do not see that the defendant was in any manner prejudiced by the refusal of the trial judge to charge as requested.

The final question to be decided concerns alleged error in the admission of the testimony of the witness W. A. Swint as to the condition of the masonry in plaintiff's apartment.

The witness Swint was a qualified masonry contractor and testified for the plaintiff as to the results of an examination that he made of the mortar between the brick in the floor of plaintiff's apartment. His testimony was based upon an investigation that he made about one year after plaintiff's fall. He testified as to the manner of his examination of the mortar and that he found two different types, one hard and the other easily crumbled. Samples of the mortar from the apartment were introduced into evidence to illustrate the differences. The witness testified that the mortar, which easily crumbled, had been improperly mixed by adding too much sand.

The defendant objected to the foregoing testimony solely upon the ground that the examination of the mortar, approximately one year after plaintiff's fall, and the testimony based thereon, was too remote in point of time to be of any relevancy to the issues on trial. There was no contention that the mortar examined was not present in the floor at the time of plaintiff's fall. Although the witness testified that the lapse of one year would cause some slight changes in the mortar, there was nothing to show that the ability of the witness to determine the basic constituency of the mortar was affected by the lapse of one year. The objection, therefore, went solely to the weight or credibility of the witness's testimony.

The witness Swint testified as an expert, and the question as to whether the admission of his testimony as an expert witness was proper rested largely in the discretion of the trial judge. *Collins v. Atlantic Coast Line R. Co.,* 183 S. C. 284, 190 S. E. 817. We find no abuse of discretion in the ruling of the trial judge in this regard.

Affirmed.

TAYLOR, C. J., and MOSS and BUSSEY, JJ., concur.

BRAILSFORD, J., dissents.

BRAILSFORD, Justice (dissenting).

I respectfully dissent from the able opinion of Mr. Justice Lewis, which predicates liability for plaintiff's injuries on the lessor's negligence in repairing the sunken floor in September, 1959. These repairs restored the floor to a safe condition, in which it remained for approximately one year. However, because of an insufficient mixture of mortar and sand and of other factors for which the lessor was responsible, the joints in the brick floor were not durable and crevices gradually developed. Because of these, the floor became unsafe for plaintiff's use some months prior to her injury, and further repairs were needed. This condition was open and obvious and was known to both parties. The lessor acknowledged it and, from time to time, assured plaintiff that repairs would be made. There was ample opportunity after the hazard developed and before plaintiff was injured for this to have been accomplished or for plaintiff to have moved out of the apartment.

Under the law of this jurisdiction, as ably expounded in the majority opinion, no obligation to make repairs arises from the relation of landlord and tenant. A landlord is not liable for personal injuries resulting from a defect in premises wholly occupied by a tenant, even though the landlord may be contractually obligated to repair. There are exceptions to the rule of non-liability, notably, where there are latent defects, known to the landlord, of which he fails to give notice. Furthermore, a landlord who undertakes to make repairs or improvements, while the property is occupied by a tenant, must do so in a reasonably prudent manner, and will be liable in tort for any injury caused by his negligence in this respect. The principle on which liability for negligence in making repairs rests is the same whether the intervention of the landlord has been gratuitous or pursuant to a contractual obligation to repair. Its logical basis is that the landlord, by making the repairs, gives an implied assurance that the work has been carefully done and the premises restored to a safe condition for occupancy. 52 C. J. S. Landlord and Tenant § 417 c. (2) page 44.

Here, the crevices to which plaintiff's injuries are attributed developed gradually, and in full view, after the 1959 repairs had been made. Plaintiff knew of their existence for some months before she was injured in September, 1961. The prior intervention of the lessor had no tendency to deceive her as to the condition of the floor at the time of her injury. Her plight was exactly the same as though the crevices had existed at the inception of her tenancy, for which, admittedly, no liability would have attached.

In my judgment, the following quotation from 32 Am. Jur., Landlord and Tenant, 1962 Supplement, page 57, is sound and shows that the principle relied upon simply does not fit the facts of this case:

"* * * The basis of the liability of a landlord for negligence in making repairs without any obligation to do so is generally considered to be the reliance placed upon such conduct or the confidence induced thereby. Therefore, it must appear that the person injured did in fact rely upon the making of the repairs when using the premises in order to render the landlord liable for an injury due to negligence in making the repairs."

In addition to the authorities cited above and in the majority opinion, see Annotation, 150 A. L. R. 1373; Prosser, Law of Torts, (2d) Ed., page 476; and Restatement of Torts, Sec. 362.

Assuming, however, that the evidence is sufficient to establish a *prima facie* case of liability, in my judgment, the only reasonable inference from the admitted facts is that plaintiff assumed the risk of harm from this known hazard. The parakeet incident may explain her momentary forgetfulness, but cannot soundly be held to have relieved her of the consequences of her antecedent, deliberate choice to continue using the defective floor, thus, "impliedly agreeing to look out for herself and to relieve the defendant of responsibility." *Baker v. Clark,* 233 S. C. 20, 25, 103 S. E.

(2d) 395, 396. The only escape from this conclusion which the court's instructions offered to the jury was the opportunity to find that plaintiff acted reasonably in relying upon the lessor's promises to repair. Any such right of reliance terminated on the lessor's death, more than twenty days prior to plaintiff's injury.

I would reverse the judgment below.