1370

Betty J. WATSON, Respondent v. Barbara SELLERS, Appellant.
(385 S. E. (2d) 369)

Court of Appeals

*John B. McCutcheon, Jr.*, and *William E. Lawson*, both of *McCutcheon, McCutcheon & Baxter*, Conway, *for appellant.*

*Larry L. Hanna*, Myrtle Beach, *for respondent.*

Heard March 17, 1989.

Decided July 10, 1989.

GARDNER, Judge:

We are here called upon to decide, *inter alia*, the novel and important question of whether the trial judge in this case erred in instructing the jury during the trial of this case that the South Carolina Residential Landlord and Tenant Act[1] creates a duty to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition" the breach of which gives rise to a tort action for personal injuries.

Barbara Sellers (Sellers), owner of Maple Lane Mobile Home Park, rented a mobile home in the park to Betty Watson. Sellers provided a set of wood stairs for access to the trailer's front door. On October 3, 1986, these stairs collapsed under Watson, causing her to fall and suffer serious and disabling injuries. Watson sued Sellers and alleged, *inter alia*, a cause of action for negligence, including an allegation that Sellers negligently repaired the stairs after undertaking to do so. Before trial, Sellers moved to dismiss; the motion was denied. At trial Sellers' motions for directed verdict were overruled; the trial judge denied Sellers' request to charge the doctrine of assumption of risk. The jury returned a verdict of $30,000 and found upon special interrogatories that Sellers' conduct was wilful. Sellers' post-judgment motions for judgment n.o.v. and new trial were denied. The trial judge ordered that attorney fees be set at a later date. Sellers appeals. We affirm.

---

[1] Section 27-40-10, et seq., Code of Laws of South Carolina (1976, as amended).

## ISSUES

The issues presented are (1) whether the trial judge erred in refusing to grant Sellers' requested charge as to assumption of risk, (2) whether the trial judge erred in allowing hearsay testimony, and (3) whether the trial judge erred in instructing the jury that the South Carolina Residential Landlord and Tenant Act created a duty, the breach of which would give rise to a tort action for personal injuries.

## FACTS

Sellers' mobile home park comprises twelve mobile home units. Watson rented one of these for $200 a month.

Watson testified that when she first had a problem with the stairs at her front entrance, she asked Sellers to have them checked or replaced "because the boards were real loose." As a result, a woman named Rufus, who did repair work for Sellers, replaced one of the steps of the stairs. Watson also testified that prior to this, she had arranged for a co-worker to build stairs for both the front and rear entrances of her unit, but that because he was Black, Sellers made him leave the park and said she would take care of repairing the stairs. Watson also testified that the stairs were "real rickety" but that she did not know that they were rotten and "had no call to think [she] was going to step on it and it was going to totally collapse."

Ms. Rufus testified that about two weeks before the accident, the bottom step of the set had broken when Watson stepped on it and Sellers had instructed her just to replace that board. Rufus also testified that in a later conversation, she told Sellers that the stairs needed to be replaced and that Sellers acknowledged that a lot of stairs in the park needed fixing or replacing. Rufus, however, also testified that she did not recall ever telling Watson that the Sellers' stairs needed to be replaced. She testified that she saw the accident occur, and that the "brace" that supports the stairs broke in half and "one whole side just collapsed with her." She testified that the stairs were rotten and were infested with termites and, importantly, that one could not tell this by looking at the stairs unless "you got down on the ground and looked up under them."

There is testimony of record that the steps were rickety

and that Watson knew that. Sellers testified that she had checked all the stairs in the park in August 1986, and found Watson's set to be "fine" and "solid." She did not move the stairs or turn them over at the time because they looked good. She also testified, however, that she had not checked the stairs since August and, further, she testified that neither Watson nor anybody else had brought any problem with the stairs to her attention prior to Watson's fall. Sellers also testified that she had never instructed Rufus to replace treads of Watson's stairs and that she had not paid Rufus for doing it. She, however, admitted that Rufus did work for her in the park. And on cross-examination, Sellers admitted that she had undertaken "to keep the steps in good repair." In line with this thought, Rufus testified that Sellers "undertook to repair the steps."

The issue relating to the alleged error in the admission of hearsay testimony arises from the following exchange between Watson and her counsel on direct examination concerning Watson's damages:

Q. Just tell us what—you say Dr. Dawson and them were treating you?

A. Yes, sir.

Q. Did they ever set you up for surgery?

A. Yes, sir. It was supposed to have been the twenty-sixth of October. And then with no insurance and no money to pay a down payment in the hospital, then I—it was rescheduled for November 2 which I still didn't have the money so it's postponed now indefinitely until I can come up with the money to pay the deposit on the hospital bill itself.

A. How much money?

A. It's seven thousand seven hundred dollars.

Q. That is for the hospitalization and the surgery?

A. The total replacement of my hip and pelvis on the left side.

MR. LAWSON: Your Honor, may we approach the bench?

THE COURT: All right.

(Whereupon, a bench conference is held within the presence of the jury but out of the hearing of the jury.)

The record does not contain any further comment about the quoted testimony until just before the case was submitted to the jury. At that time, the following is of record.

(Lunch recess.)

THE COURT: I believe the defense has something they want to put on the record.

MR. LAWSON: Yes, sir. If it please the Court, as his honor will recall during the plaintiff's testimony I asked to approach the bench and brought up an objection at the bench concerning the plaintiff's testimony as to the diagnosis, I guess you would say, of the orthopedic surgeon in Florence. I believe it was Dr. Moore, that she would need a total hip replacement and that it would cost some seventy-five or seventy-seven hundred dollars. My objection being that that was—being that it was hearsay. Anything that she would know would have definitely come from the doctor. She did not lay the proper foundation to testify to that and it's not something that was in her own knowledge. It was something that had been told to her by Dr. Moore. We had the bench conference with Mr. Hanna also present at the bench. As we left you said you overruled the objection. At lunch I realized you probably had overruled an objection that was not on the record. I just want to put it on the record for the defendant's protection.

THE COURT: All right. Bring the jury in.

In the jury charge, the trial judge quoted Section 27-40-440(a)(2) and also the following:

I will charge you that if the landlord does attempt to make repairs but the repairs are done in a negligent fashion, then the landlord is also liable for anyone injured as a result of the negligent repairs undertaken by the landlord.

## DISCUSSION

### I.

### Assumption of Risk

The applicability of the doctrine of assumption of risk was raised by Sellers in her motions for directed verdict and judgment n.o.v., both of which were overruled. Additionally, the trial judge denied Sellers' request to charge assumption of risk.

The requirements for the doctrine of assumption of risk are: (1) the plaintiff has knowledge of the facts constituting a dangerous condition, (2) he knows the condition is dangerous, (3) he appreciates the nature and extent of the danger, and (4) he voluntarily exposes himself to the danger. *Senn v. Sun Printing Co.*, 295 S. C. 169, 367 S. E. (2d) 456 (Ct. App. 1988).

The trial judge gave as his reason for denying the request to charge assumption of risk the fact that the only thing the plaintiff said in her testimony was the steps were rickety. We have examined carefully Watson's testimony about this subject and have herein reviewed her testimony relative to this issue. We agree with the reasoning of the trial judge. The effect of Watson's testimony is that she knew the steps were "real rickety" but she also said emphatically that she "did not know they were rotten" and "had no cause to think that [she] was going to step on it and it was going to totally collapse." Rufus, the repair woman, testified that after the accident, she examined the stairs and found that they were rotten and infested with termites and, importantly, that the only way to discover this condition was to "[get] down on the ground and [look] up under them."

We find nothing in the record from which an inference can be drawn that Watson knew or should have known about the termites and the rotten condition of the support for the stairs; there is no evidence creating an inference that Watson knew or should have known that the steps would crumble under her when she stepped or walked on them. Since there is no evidence creating an inference that Watson knew of the extent of the danger, we reject the contention presented by Watson that the doctrine of assumption of risk is applicable to the facts of this case. The trial judge did not err in refusing to charge assumption of risk; and we so hold.

## II.

### Alleged Hearsay Evidence

The record reveals that the defendant objected without stating the ground and asked to approach the bench; both attorneys approached the bench but nothing appears of record about the conversation which ensued. Sellers' attorney, just before the case went to the jury, stated the grounds of the objection as being hearsay and then argued that any knowledge on the part of Watson would have to be a result of hearsay. This is conjectural. The testimony objected to was not an out of court statement; it did not squarely present a hearsay question. Where a witness may have personal knowledge of the matter in controversy and his testimony does not affirmatively appear to be hearsay, it should be received, subject to being stricken if it later appears to be objectionable hearsay. 31A C. J. S. *Evidence* Section 202 (1964).

Lawyers of this state are required to zealously represent their clients. Rule 32, Rules of Practice in the Supreme Court of South Carolina, Code of Professional Responsibility, Canon 7. The proper procedure for Sellers' attorney would have been to request that the jury be excused and thereupon request the court for permission at that time to cross-examine Watson to determine if the testimony were a product of hearsay. Or in the alternative, Watson's attorney could have cross-examined Watson in the presence of the jury about this issue to determine if her testimony was a product of hearsay; if it developed that the testimony was a product of hearsay, then Sellers' attorney should have moved the judge at that time to strike the testimony objected to and to instruct the jury to disregard this testimony. Having failed to do either, and in view of the well-established rule that the admission of testimony is within the sound discretion of the trial judge, we reject this contention by Sellers.

## III.

### The Residential Landlord and Tenant Act

We next address whether the trial judge erred by instructing the jury that the South Carolina Residential Land-

lord and Tenant Act (RLTA) creates a right of action in tort for the breach of duty owed by the landlord to the tenant.

Heretofore, the courts of this state have held that the relationship of landlord and tenant, by itself, imposes no legal duty on the part of the landlord to keep in repair leased residential premises under the control of the tenant. *Conner v. Farmers and Merchants Bank,* 243 S. C. 132, 132 S. E. (2d) 385 (1963). Our Supreme Court has recognized, however, a duty on the part of the landlord to exercise reasonable care in making repairs or improvements when the landlord has undertaken to repair or improve the premises. *Id.* This has been the long-standing law of this state.

Sellers first argues that the RLTA is in derogation of common law and, therefore, the statute should be strictly construed; with this we agree. Sellers further argues that there is no indication, by plain wording or from the legislative history behind the passage of the RLTA, that it is designed to abrogate the well-defined and established common law and embark on a course totally divergent from existing precedent in this area as to the duty of the landlord to the tenant to repair the leased premises. With this we strongly disagree.

"A state has the constitutional and legislative power to change or modify the common law so as to create duties and liabilities which never existed before." 1 Am. Jur. (2d) *Actions* Section 73 (1962). "[W]hen a statute confers a right and a remedy where none existed before, its plain meaning must be given effect." *Id.* It is also well settled that a private right of action may be predicated upon the violation of a statute mandating the doing of an act for the benefit of another or prohibiting the doing of an act which might cause injury to another, even though no such right of action is given by the express terms of such statute; this depends upon the intent of the legislature to impose liability. *Id.*

As will be later noted, we hold that the RLTA by express words creates a cause of action in tort in favor of a tenant of residential property against his landlord for failure, after notice, to make necessary repairs and to do what is reasonably necessary to keep the premises in a habitable condition; however, in view of Sellers' contention that the Act does not expressly create such a cause of action, we briefly review the

law relating to whether a statute impliedly creates a new cause of action.

The landmark federal case on this subject is the case of *Cort v. Ash*, 422 U. S. 66, 95 S. Ct. 2080, 45 L. Ed. (2d) 26 (1975); there the U. S. Supreme Court held that the factors relevant in determining whether a private remedy is implicit in a statute not expressly providing one are, in pertinent part: (1) Is plaintiff one of the class for whose special benefit the statute was enacted? (2) Is there any indication of legislative intent explicit or implicit, either to create such a remedy or deny one? and (3) Is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for plaintiff?

Judge Bell of this Court, in *Rayfield v. S. C. Dept. of Corrections*, 297 S. C. 95, 374 S. E. (2d) 910 (Ct. App. 1988), carefully analyzed South Carolina authority on this subject. We quote from his opinion:

> In order to show that the defendant owes him a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect.

297 S. C. at 103, 374 S. E. (2d) at 914. For purposes of this case, we see no inconsistency with the test of *Cort v. Ash*.

With the above principles of law in mind, we review the South Carolina RLTA, which is set forth in Sections 27-40-10 through 27-40-940, Code of Laws of South Carolina (1976, as amended).

The preamble to the South Carolina RLTA provides, *inter alia*, that the Act is "to provide for landlord obligations, liabilities and remedies." *See* 1986 S. C. Acts 336.

Section 27-40-20 provides, in pertinent part, that the purpose of the act is "to simplify, clarify, *modernize, and revise* the law governing rental of dwelling units and the rights and obligations of the landlords and tenants." (Emphasis ours.)

Section 27-40-50 provides that, "(a) The remedies provided by this chapter must be so administered that an aggrieved party may recover appropriate damages," and further that,

"(b) Any right or obligation declared by this chapter is enforceable by action unless the provision declaring it specifies a different and limited effect."[2]

The principal statute which creates a cause of action is Section 27-40-440 wherein it is provided in pertinent part that, "A landlord shall ... make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition; ..."

And finally, Section 27-40-610(b) provides in pertinent part that, "the tenant may recover actual damages ... for any noncompliance by the landlord with ... Section 27-40-440." This statute also provides, "If the landlord's noncompliance is wilful, the tenant may recover reasonable attorney fees." Section 27-40-610(c).

With reference to the present or modern view on this subject, we note at this time that our RLTA amounts to a substantial adoption of the major provisions of the Uniform Residential Landlord and Tenant Act which was first adopted by the State of Hawaii in 1972; since then, it has been adopted by Alaska, Arizona, Florida, Iowa, Kansas, Kentucky, Montana, Nebraska, New Mexico, Oregon, Rhode Island, Tennessee and Virginia. 7B U. L. A. 427, *et seq.* (1985 and Supp. 1989). As a matter of fact, the vast majority of states now reject the thesis that a landlord is immune from tort liability for injuries sustained on rented premises; an abrogation of this immunity has been advocated by most legal commentators[3] and it has been abolished either in whole or in part in the majority of the states of this nation. In addition to those states adopting the Uniform Residential Landlord and Tenant Act, see the following: *Shroades v. Rental Homes, Inc.*, 68 Ohio St. (2d) 20, 427 N. E. (2d) 774 (1981); *Sargent v. Ross*, 113 N. H. 388, 308 A. (2d) 528 (1973); *Putnam v. Stout*, 38 N. Y. (2d) 607, 381 N. Y. S. (2d) 848, 345 N. E. (2d) 319 (1976); *Mobil Oil Corp. v. Thorn*, 401 Mich. 306,

---

[2] Section 27-40-210 defines "action" as including, *inter alia*, "any ... proceeding in which rights are determined...."

[3] *See* Wilcox, A Lawyer's Guide to the South Carolina Residential Landlord and Tenant Act, 39 S. C. L. Rev. 493 (1988). *Also see* R. L. Felix and F. P. Hubbard, "Liability of Sellers and Lessors of Residential Realty in South Carolina," *Current Issues in Civil Litigation*, a South Carolina Bar Continuing Judicial Legal Education Seminar, April 14, 1989.

258 N. W. (2d) 30 (1977); *Pagelsdorf v. Safeco Ins. Co. of America*, 91 Wis. (2d) 734, 284 N. W. (2d) 55 (1979); *Young v. Garwacki*, 380 Mass. 162, 402 N. E. (2d) 1045 (1980); *Francis v. Pic*, 226 N. W. (2d) 654 (N. D. 1975). *Also see Restatement (Second) of Property, Landlord and Tenant*, Section 17.6 (1977); *Restatement (Second) of Torts*, Sections 286-288C (1965). For other cases, see West's Decennial and General Digests *Landlords and Tenants* Key Nos. 164(2) and 164(6).

We conclude, therefore, that the General Assembly of South Carolina directed this court by Section 27-40-20 to implement its intent to modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants by enforcing the RLTA in cases such as the one presently before this court. We therefore reject Sellers' contention that the Legislature did not intend to abrogate the existing law on this subject. It was the intent of the Legislature to cause the law of this state to be consonant with the modern trend as set forth above; and we so hold.

Next, and with reference to the intent of the Legislature, we hold that the preamble and the Act clearly convey an intent on the part of the Legislature to provide for a cause of action for injuries resulting from the failure of the landlord, after notice, to keep rented residential premises in repair. As noted it was the intent of the Legislature to modernize landlord and tenant law; the preamble to the Act expressly states that it was the intent of the Legislature to provide for the obligations and liabilities of the landlord; by Section 27-40-50, the Legislature provided, *inter alia*, that the liability of the landlord may be enforced by legal proceedings. And finally, Section 27-40-610 provides that the tenant may recover actual damages and, if the landlord's noncompliance is wilful, the tenant may recover reasonable attorney fees. These provisions in plain words reflect the intent of the Legislature to create a cause of action in favor of the tenant and against the landlord for failure, after notice, to keep in good repair.

We hold (1) that Watson, as a tenant of leased residential premises, is a member of a class for whose special benefit the RLTA was enacted, (2) that the RLTA explictly creates a cause of action in tort for the failure of the landlord to

repair a defect in the premises after notice is given as required by the Act and (3) that our holding in this case is consistent with the expressed and underlying purposes of the legislative scheme to create a remedy for residential tenants in cases such as this one. Thus the tests of *Cort v. Ash*, and *Rayfield* are also met.

For the above reasons, we affirm the learned trial judge's instruction to the jury that the RLTA created a cause of action in tort for the failure of a landlord to repair the premises after notice.

Moreover, the case was submitted to the jury on two theories, to wit: (1) breach of the duty provided by the RLTA and (2) the theory that where the landlord does attempt to make repairs and the repairs are done in a negligent manner, the landlord is liable for injuries proximately resulting from the negligent repair. Where a case is submitted to a jury on two or more theories and a general verdict is returned, the verdict will be upheld if it is supported by at least one theory. *Gasque v. Heublein, Inc.*, 281 S. C. 278, 315 S. E. (2d) 556 (Ct. App. 1984).

There is evidence of record that Watson was going to have the steps repaired but because the person with whom she was dealing was a Black person, Sellers refused to permit her to proceed and assumed the responsibility of the repair to the steps.

In the case of *Conner v. Farmers and Merchants Bank*, *supra*, the Supreme Court of South Carolina adopted the general rule as stated in 32 Am. Jur. *Landlord and Tenant*, Section 678 (1941) which is:

> Although a landlord ordinarily is not liable either to the tenant or his guests or invitees for the safe condition of the leased premises the possession of which he has surrendered to the lessee, it is well established that if he undertakes to repair or improve the demised premises, whether he is under an obligation imposed by a covenant on his part to repair or improve or not, he is required to exercise reasonable care in making such repairs or improvements, and is liable for injuries caused by his negligence or unskillfulness or that of his servants and employees in making them *or* in leaving the premises in an unsafe condition. The rule applies

where the property of the tenant is injured, as well as where personal injuries are received. [Emphasis ours.]

There is abundant evidence of record to support liability under the above doctrine which was charged to the jury. We hold, therefore, under the two-issue rule, even had the RLTA not created a cause of action for personal injury for failure to repair after notice on the part of the landlord, that the above quoted rule of *Conner* is supported by the evidence of this case and for that reason, the appealed judgment must be affirmed.

## CONCLUSION

For the reasons given, we reject the arguments made by Sellers. The trial judge, we hold, properly refused to instruct the jury about the doctrine of assumption of risk. We hold this because the evidence is conclusive, in our opinion, that Watson did not know of the extent of danger of the stairs; the real danger of the stairs, according to the testimony before us, could only be established by getting under the stairs to see the rotted foundation. The evidence of record establishes that Watson, in fact, did not have cause to believe that the stairs would totally collapse as she walked on them.

And we hold that the contention that the trial judge erroneously admitted hearsay testimony is without merit. Sellers' attorney had every opportunity to establish whether Watson's testimony was a product of hearsay; he failed to cross-examine Watson about the issue. The reason for the trial judge's overruling of the objection is not of record. What is of record is the failure of Sellers to make it affirmatively appear that Watson spoke from hearsay; we therefore find no error in the admission of this testimony.

And we also hold for the reasons given, that the General Assembly intended to modernize and revise the law governing the rental of dwelling units and the rights and obligations and liabilities of the landlord. The modern view as expressed by the majority of the courts of this nation and legal commentators is that the thesis that a landlord is immune from tort liability for injuries sustained on rented residential premises is anachronistic; the majority of states have abrogated this immunity. It was the intent of our

General Assembly to abrogate the immunity, and we so hold.

The South Carolina RLTA intended to provide for landlord liability. The General Assembly expressly provided that the landlord has a duty to make all repairs and to do whatever is reasonably necessary to keep the premises in a fit and habitable condition. If, after notice of a dangerous condition, the landlord fails to repair, then this duty is breached. The RLTA provides for the recovery of actual damages by an "action," which is defined as any proceeding in which rights are determined. In this case there is evidence of a breach of the duty to repair after notice; the jury found that the landlord wilfully breached this duty. Under these circumstances, it is the holding of this court that the trial judge properly ruled that a cause of action had been created by the RLTA.

We realize that the General Assembly has made a profound change in the law relating to the responsibilities of the landlord of residential property. The judiciary has a responsibility to enforce the laws of this state created by the Legislature and the executive branch. We, therefore, affirm the appealed judgment.

Affirmed.

SANDERS, C. J., and CURETON, J., concur.