## 11682

### MALLARD v. DUKE *ET AL.*

(126 S. E., 525)

1. LANDLORD AND TENANT—EVIDENCE HELD INSUFFICIENT FOR SUB-MISSION TO JURY OF QUESTION WHETHER LESSOR MISREPRESENTED GENERAL CHARACTER OF COMPLETED BUILDING.—In action for rent, in which lessee claimed the right to rescind the contract, made prior to completion of building, for fraudulent representations as to character of completed building, evidence *held* insufficient for submission of such question to jury.

2. LANDLORD AND TENANT—LANDLORD DOES NOT IMPLIEDLY AGREE TO REPAIR OR IMPROVE OR MAKE PREMISES SUITABLE FOR LESSEE'S PURPOSES.—Landlord does not impliedly agree to repair, or improve, or to make premises suitable for lessee's purposes.

3. EVIDENCE—PAROL EVIDENCE AS TO ORAL PROMISE NOT ADMISSIBLE, UNLESS PROMISE WAS COLLATERAL, AND ALSO ON SUBJECT DISTINCT FROM THAT OF WRITTEN CONTRACT.—Parol promise by party to written lease, to justify admission of testimony thereof, must not only be collateral, but should relate to subject distinct from that to which the written contract refers or applies.

4. EVIDENCE—PAROL EVIDENCE AS TO ORAL PROMISE OF LESSOR TO PUT PREMISES IN CERTAIN CONDITION HELD NOT ADMISSIBLE.—Evidence as to lessor's parol promise to put building in certain condition *held* not admissible.

5. APPEAL AND ERROR—DEFENDANTS COULD NOT COMPLAIN OF INSTRUC-TION FAVORABLE TO THEM.—In action for rent in which the defendants claimed that the building at the time was surrendered was untenantable, defendants could not complain of instruction submitting question of whether the building at such time was so injured as to be untenantable; that is, "not fit to be used for the purpose it is meant to be used, and for which it is rented"—even though there was no evidence to establish "injury" or "destruction" within lease providing for lease of parties therefrom on injury or destruction rendering premises untenantable, since such instruction was favorable to defendants.

6. LANDLORD AND TENANT—EVIDENCE HELD SUFFICIENT FOR SUBMISSION OF QUESTION OF WHETHER TENANTS HAD WAIVED UNTENANTABLE CONDITION.—In action for rent, evidence *held* sufficient for submission of question of whether defendants had waived untenantable condition of premises because of dampness.

7. LANDLORD AND TENANT—TENANTS COULD WAIVE UNTENANTABLE CONDITION BECAUSE OF DAMPNESS.—Tenants could waive untenantable condition of premises because of dampness.

8. TRIAL—COURT HELD NOT TO HAVE CHARGED THAT DEFENDANTS WAIVED UNTENANTABLE CONDITION OF PREMISES BY REMAINING IN POSSESSION, WITH KNOWLEDGE THEREOF.—In action for rent, charge *held* not subject to construction that defendants waived untenantable condition by remaining in possession after they knew or could have ascertained untenantable condition, in view of other charges given at defendant's request.

9. LANDLORD AND TENANT—PLEADINGS AND EVIDENCE HELD NOT TO WARRANT SUBMISSION OF QUESTION OF LANDLORD'S EXERCISE OF DUE DILIGENT IN EFFORTS TO RELET PREMISES.—In action for rent, failure to submit question of whether landlord exercised due diligence to rent premises after surrender by defendants, under agreement with defendants to relet, *held* warranted by pleadings and evidence.

10. APPEAL AND ERROR—CHARGE DEFINING "UNTENANTABLE" HELD FAVORABLE TO TENANTS.—In action for rent, defended on the ground that premises were surrendered because untenantable, charge defining "untenantable" as meaning "not fit to be used for the purpose it is meant to be used, and for which it is rented," *held* not prejudicial to defendants, being favorable to them.

Before ANSEL J., County Court, Greenville, January, 1923. Affirmed.

Action by Mrs. Charlotte Smith Mallard against Mrs. C. H. Duke and another. Judgment for plaintiff and defendants appeal.

The Court's charge follows:

We have taken up considerable time and there is a great deal of testimony introduced into the case that is not necessary for you to consider at all, as I have ruled it out. We are now on the civil side of the Court and when the plaintiff brings a case into Court he must prove his case by the preponderance of the evidence, the greater weight of the evidence, not necessarily the greater number of witnesses. You put the evidence of the plaintiff in one side of an imaginary scale and the evidence of the defendant in the other, and which side goes down preponderates. It is the testimony which brings conviction to your mind from the testimony heard on the stand from the witnesses. The complaint in the case is as follows: (Reads.) Then the defendants file what we know as an answer, which I will real. (Reads.) There is a counterclaim and a denial to that.

I will state to you according to my opinion in reference to the motion, so far as fraud in execution of the papers is out of the case. The question for you is whether or not at the time the property was surrendered whether the building was so injured as to render it untenantable? You are to get that from what you have heard from the witnesses. Were the premises untenantable, and did the defendants know of it, and could they have ascertained it, if so, did they waive their right to insist upon that? It is in the contract that they would have the right to surrender if such were the case. The question of waiver is one for you. The Judge cannot tell you whether it is or not, but I can give you the definition of waiver, which is the voluntary relinquishment of the right of a party, the passing over or putting aside, whether in express terms or acts inconsistent with their rights. That is the definition of waiver, and you are to apply the testimony to that definition as I have given it to you. So the first question for you to pass on is, Was the building untenantable at the time when the keys were

surrendered, February 1, 1922? and you are to get that information from the evidence in the case. The law does not allow me to state any of the evidence or give you my opinion. I am to state the law to you, and you are to take the law as I give it to you and apply it to the facts you have heard from the witnesses. You know what untenantable is, not fit to be used for the purpose it is meant to be used, and for which it is rented. If you conclude it was tenantable at that time, you need go no further; if it was, the plaintiff is entitled to a verdict in her favor for the amount of rent, but not if you come to the conclusion it was not, and this is set up by the defendants and must be proved by them by the preponderance of the evidence. You see the onus shifts at that time and they must prove it was untenantable by the preponderance of the evidence. If they went in and remained there. then the question for you to say is whether it was untenantable at the time they gave it up. You pass upon the question as to whether it was untenantable or not; if it was, then the question of waiver comes in.

I could pass upon the question of promise, but should I charge you on that it would be from the case in 117 S. C. *Livingston v. Reid & Hart,* p. 391; 109 S. E., 106. I submit the case to you upon those two questions alone. I have been requested to charge you as follows, and it is made my duty under the law to pass upon them. 1, 2 and 3 are refused.

4. If you find that it was not in a completed condition within the meaning of the parties when delivered to the defendants, the question then arises, Did the defendants waive the defects by going into possession under the lease? If they knew of the condition of which they now complain when they went into possession or found it out afterwards and remained in the building knowing the condition, they have waived it. But if it was a hidden defect and such a defect that reasonable inspection would not have disclosed it, then they did not waive it by going into possession.

I charge you that it is about the question of whether they waived by going in in the first instance.

5. It is entirely possible for a situation to arise where a tenant would know there was something wrong and yet not know what it was or what caused it. "Waiver" is the intentional relinquishment of a known right and one must be familiar with the facts before he can be said to have waived a right upon those facts.

I have given you the definition of waiver.

6. Is refused.

7. Where a landlord puts property into the hands of an agent for the purpose of renting it, collecting the rents, and in the course of dealings between the parties, it is the agent and not the landlord who deals with the tenant. Notice to the agent is just as binding on the landlord as notice given direct to the landlord. So that if you find that the plaintiff intrusted this property to the management of an agent, any complaint made by the tenant to such agent would have the same effect in law as if made direct to the landlord.

That is good law and you are so charged. Unless they had waived that condition, as already defined to you.

8. Similarly, it is not necessary that the tenant make his or her complaint in person. The tenant may make the complaint through any one he desires. The vital thing is that the tenant, through some channel or other, brings his complaint to the notice of the landlord or the landlord's authorized agent. Charge.

9. Is refused.

10. It is specified in the lease that if the premises shall be "so injured as to render them untenantable" the lease should be at an end. Consequently, if you find that this building became untenantable, and by reason thereof defendants and their tenants moved out and gave up the keys to plaintiff, I charge you that from that time the lease would be at an end, and plaintiff could not recover for any rent thereafter falling due.

Charged, unless they had waived that condition as I have already defined waiver to you.

11, 12, 13 and 14 are refused.

15. The jury is charged that, as the lease provides, that if the premises became injured so as to render the building untenantable the defendants would have the right to terminate the lease. The jury is charged, therefore, that if the building became untenantable for any reason not chargeable to the negligence or default of the defendants then they would be justified in abandoning the premises unless there had been a waiver on the part of the defendants. On the question of whether the premises were untenantable, the jury may take into consideration all the facts and circumstances, including the nature of the business conducted by the defendants and the purpose for which the building was rented, if known to the landlord at the time. The facts are entirely for the jury on the question of what would render the premises untenantable.

Charged, and in connection with that you take into consideration the condition of the weather; if there was a defect, whether it was brought about by ordinary weather or for some other reason. They are all questions for you to take into consideration.

16. Before a tenant can abandon property leased by him or her on account of conditions which render the premises untenantable, complaint must first be made to the landlord or his agent, and a reasonable time allowed for the landlord to remedy the conditions, and it is a question for the jury as to what is a reasonable time under the facts and circumstances. That is correct, and I can go further than that. If the testimony shows it was untenantable at the time, it is not necessary to give notice at all under the lease. That goes further than the request to charge.

That about covers the law in the case, so you take the papers and exhibits you might want in consideration of the case. If you find for the plaintiff, you say on the back of

this amended complaint, "We find for the plaintiff" the amount of rent and interest, whatever it is, and if you find for the defendant, you say, "We find for the defendant." Whatever your conclusions may be, let it be known by the verdict you render.

Mr. Haynsworth: I thought you might charge on the compromise.

Court: They are to take into consideration the condition of the building at the time the key was delivered.

Mr. Haynsworth: It is bearing on the question of waiver. If the facts show, as alleged, it was unsatisfactory, if it was known or could have been ascertained at the time of the settlement, they could have no recovery.

Court: I am not going to submit that to the jury, but only the question was it untenantable at the time. It is my construction of the contract if it became untenantable any time under the lease then the lessee had the right to terminate it. I am only construing the contract so you see, gentlemen, the importance of whether it was untenantable.

*Messrs. Nettles & Oxner,* for appellants, cite: *Admissibility of evidence:* 119 S. C., 340; 53 S. C., 483; 89 S. C., 73; 79 S. C., 459; 92 S. C., 226.

*Messrs. Haynsworth & Haynsworth,* for respondent, cite: *No fact on which the charge of fraud can be predicated:* 117 S. C., 391; 81 N. W., 720; 124 S. C., 8. *Waiver of right to rescind or repudiate:* 44 N. W., 676; 148 Ill. App., 104; 48 A. S. R., 671; 16 R. C. L., 965; 142 N. Y. S., 333; "Untenantable" 20 Pac., 621. *Tenant takes the building as it is with no implied covenant that it is fit for the purpose for which it was leased:* 147 U. S., 413; 16 A. S. R., 744; 1 Washburn on Real Prop., 575; 1 Tiffany on Real Prop. Sec. 51; 19 R. C. L., 772; 24 Cyc., 1047. *Use of the word "injured" in clause providing for release:* 52 A. R., 99; 54 N. Y., 450; 16 R. C. L., 964. *Compromise made in good faith:* 12 C. J., 343, 339; 24 S. C. Eq., 318; 153 Pac., 1076.

February 12, 1925.

The opinion of the Court was delivered by Mr. JUSTICE MARION.

"This is an action for the recovery of the rental of a brick building leased by plaintiff to defendants. The complaint alleges that on May 15, 1920, the parties entered into a written lease for a period of three years, beginning June 1, 1920, or as soon thereafter as the building should be completed; that the building was completed and defendants went into possession on July 1, 1920; that they remained in possession and paid the rent up to January 31, 1922, but failed to pay the rent for the period from February 1, 1922, to January 31, 1923, for the collection of which the action is brought."

The defendants, by their answer, "denied liability on two grounds: (1) Because the landlord had failed to complete the building according to agreement, by reason of which failure the building turned out to be unfit for use, and the tenants vacated on that account; (2) because the building became untenantable within the meaning of the lease, on which account they vacated, and were thereby absolved from further liability for rent under the terms of the lease. The tenants also interposed a counterclaim based on the fact that they had put an expensive tile floor in the building, the value of which was lost to them by reason of their having to vacate."

The rulings of the trial Court which are charged to be erroneous, and the contentions thereupon predicated, are thus stated by appellants' counsel:

"His Honor, the trial Judge, let in the evidence to sustain the first defense and the counterclaim, but, when he refused to direct a verdict for plaintiff, he stated that he would not submit to the jury either the first defense or the counterclaim, but only the second defense, and that, in connection with it, he would charge the jury that, even if they found the premises were untenantable, their verdict should be for

the plaintiff for the full amount of the rent if they found that defendants had waived their right to vacate by remaining in possession after discovering the condition of the premises. When he came to charge the jury, these were the only issues submitted to them. Defendants contend that his Honor was in error in withdrawing the first defense and the counterclaim from the jury, and in charging that the law of waiver was applicable to the second defense. There are other questions raised by the appeal, which will be hereafter considered, but the main questions are those just stated."

The facts, broadly outlined, out of which the controversy arises, are as follows: The lease was of a two-story brick building then in process of erection, entered into on May 15, 1920, for a term of three years and provided that rent should "commence the 1st day of June, 1920, or as soon as the building is completed." The defendants were permitted, over plaintiff's objection, to introduce testimony to the effect that, prior to or at the time of the making of the written contract, the plaintiff's agent assured them that the building "would be first class in every particular and up to date." The building was leased for the purpose of operating therein a tearoom or restaurant. Before signing the lease the defendants inspected the building. One of the defendant's witnesses testified:

"The lease was signed up after we had gone over the building; the walls were up and the roof was on, but the floors had not been put down. The outside part was finished, but there was considerable inside work to do."

"Before taking possession the premises were frequently visited by defendants. On July 1, 1920, defendants took possession. From the outset they failed to pay the rent stipulated in the contract. The plaintiff allowed a deduction from the July rent of $125, on account of delay. A controversy as to alleged defects in the building arose and continued until December 31, 1920, on which date a com-

promise settlement was effected. By the terms of this settlement, conducted by the attorneys of the respective parties, the plaintiff made an additional allowance, or deduction, for rent due under the contract, of $650, and the defendants agreed "to resume payment of rent, according to the terms of the lease, on January 1, 1921." Thereafter they paid the rent each month. On January 1, 1921, the defendants sublet the first floor to one Gaddy, and thereafter operated their tearoom on the second floor until March 1, 1921, when they moved to the Ottaray Hotel and sublet the second floor. On February 1, 1922, Gaddy vacated. Defendants thereupon repudiated the lease, tendered the keys to the building, and refused to make further payments of rent. Subject, as she avers, to the understanding that such action should be without prejudice to either side, plaintiff undertook to relet the property. Subsequently this action was brought to recover the rent alleged to be due by defendants for the period of time covered by the lease, commencing February 1, 1922, when the premises were abandoned.

Assuming, for the purpose of this opinion, that the points made and the questions discussed in appellants' printed argument are sufficiently raised by the exceptions, those contentions will be considered in the order presented in argument.

The first defense, directed to the contention. that there had been a failure on the part of the plaintiff to complete the building in accordance with the representation of the plaintiff's agent that the completed building would be first class and modern in every respect, is predicated upon evidence which appellants say was to this effect:

"That the landlord's architect planned to waterproof the exposed western wall with plaster board and cement, to build up the flues above the parapet and put caps on them, and to install a ventilator on the first floor; that he was taken off the job by the landlord after the lease was signed but before the building was completed; that these things were

never done; that had they been done the interior of the building would have been dry in wet weather; that the failure to do them resulted in rain water penetrating the walls and moisture condensing on the walls, rendering the premises uncomfortable and dangerous to health and useless for a tearoom, or any ordinary use; and by reason thereof the defendants and their subtenants vacated and surrendered the premises."

The alleged misrepresentation of plaintiff's agent as to the general character of the completed building is charged in the answer to have been such a fraudulent misrepresentation as entitled the defendants to a rescission of the contract for fraud. That the foregoing evidential showing by defendants was not of itself sufficient to support an inference of fraud would seem too clear to warrant discussion; nor does the record disclose other evidence which, considered in connection with the testimony of defendants above referred to, would warrant a finding of fraud. The alleged representation was at most a mere promise as to a future event or condition, the alleged non-fulfillment of which involved details of architectural construction and supposed consequences which it does not appear that either the plaintiff or her agent had in mind, or could reasonably have foreseen, at the time the representation was made. There is, as we think, not the slightest basis in the evidence for a finding that the alleged representation was not made in good faith or that it was part of a general fraudulent design to induce the execution of the contract. *Coleman v. Stevens,* 124 S. C., 8, 15, 16, 117 S. E., 305. *Livingston v. Reid-Parr Co.,* 117 S. C., 391; 109 S. E., 106. See, also, as to tenant's right to rely on such representations generally, 16 R. C. L., 781, § 274.

That the evidence adduced was not sufficient to warrant a finding that defendants were entitled to a rescission or to other relief for fraud appears to be virtually conceded in the argument of counsel; but it is insisted that the represen-

tation of plaintiff's agent that the completed building would be first class, etc., constituted a collateral agreement, the legal effect of the breach of which was to work a constructive eviction or, in any event, to entitle defendants to recoup their damages from such breach in an action by the landlord for the rent. In appraising that proposition it is apparent that the first of appellants' premises—that the oral promise or warranty was a collateral agreement which could be proved without infringing the parol evidence rule—presents a serious question. It is contended that the nature of the alleged agreement was essentially identical with that of an oral promise to repair or to make improvements during the term of a written lease, parol evidence of which has been expressly held admissible by this Court. *Williams v. Salmond,* 79 S. C., 459; 61 S. E., 79. *Holliday v. Pegram,* 89 S. C., 73; 71 S. E., 367, Ann. Cas., 1913A, 33. We are of the opinion, however, that the application of the rule announced in the cases cited—a rule which is perhaps not in accord with the weight of authority elsewhere (see 16 R. C. L., 703, § 192; note, Ann. Cas., 1913A, 39)—does not require the conclusion that the verbal statement here in question was properly provable as a collateral agreement. The extent, as we apprehend, to which our decisions go in approving the admission of parol evidence of a contemporaneous contract on the part of the landlord to make repairs, etc., is to hold that such evidence is admissible where the written lease makes no reference to the subject of repairs or to the other extraneous subject of the alleged verbal agreement. Thus, as was said in *Holliday v. Pegram, supra:*

"If there is a lease in writing, *which makes no reference to repairs,* the lessee is not precluded from introducing parol testimony to show that, as a part of the consideration of the agreement to pay rent, the lessor promised to make repairs." (Italics added.)

Since the law does not imply an obligation on the
2-4 part of a landlord to repair or improve or to make
the premises suitable for the lessee's purposes (*Williams v. Salmond, supra;* 16 R. C. L., 772, § 268), there
can be no doubt that an agreement as to those matters may
logically be regarded as collateral to a written lease which
is wholly silent on those subjects. But, if the salutary rule
of evidence excluding extrinsic evidence to vary a written
contract is to avail anything in this field of contractual relations, it is obvious that to justify the admission of a parol
promise by one of the contracting parties to a written lease,
on the ground that the promise was collateral, the promise
must not only be collateral, but should relate to a subject
distinct from that to which the written contract refers or
applies. If the alleged promise of the plaintiff to provide
an up-to-date first-class building be construed to mean what
the defendants say it means—the assumption of an obligation to raise and cap the flues, to cement the outside of a
brick wall, and to install a ventilator—that promise related
to a subject concerning which the parties would seem plainly
to have undertaken to express and define their mutual obligations in the written contract. At the time of the making of
the contract the walls were finished, the flues constructed,
the roof on, and only the inside work remained to be completed (W. L. Luther). In that situation the parties referred to and undertook to provide in the written lease for
the structural completion of the building as follows:

"Owner is to put water pipe to upstairs floor and install
dumb-waiter, and to erect stairway in alley way to second
floor. Tenant is to pay the difference between the cost of
cement floor and tile floor on first floor."

That the foregoing provisions of the written contract
related to the subject of structural completion which the defendants now say was further covered by an additional
verbal agreement, we think, is sufficiently clear. That the
effect of such verbal agreement, as interpreted by appellants,

would be to add to and vary the terms of the written contract, is equally clear.   If so, in so far as the first defense was predicated on the breach of a collateral agreement, the trial Judge's ruling in withdrawing that defense from the jury may be sustained, on the ground that the evidence adduced to establish it was inadmissible under the parol evidence rule.   In that view it also follows that there was no error in the trial Court's conclusion that the counterclaim, based upon an alleged breach of the oral promise to provide "a modern, tight, and dry building," was not established.

The appellants' second main contention is that the trial Judge erred in charging the law of waiver as applicable to the defense that the building at the time of its surrender by defendants was untenantable.   The lease provided:

"It is further agreed that, if said premises shall be destroyed or so injured as to render them untenantable, all parties hereto from the time of such dsetruction or injury. are released from the terms of this lease."

The trial Court submitted the case to the jury under a charge to the effect that the only question for their determination was whether or not at the time the building was surrendered it was so injured as to be untenantable; that is, "not fit to be used for the purpose it is meant to be used and for which it is rented."   That action was apparently rested upon the foregoing provision of the contract as to termination in the event of untenantability from destruction or "injury."   It might well be doubted whether there was any evidence tending to establish "injury" or "destruction" within the meaning of those terms as used in the provision of the contract here invoked.   16 R. C. L., 963, 964; note, Ann. Cas., 1913A, 1100; *Hilliard v. N. Y., etc., Gas C. R. Co.,* 41 Ohio St., 662; 52 Am. Rep., 99.   But, certainly, appellants cannot complain that the case was submitted to the jury upon the theory that the evidence tending to show untenantability on account of the dampness alleged to be

due to the landlord's failure to correct defects in construc-
tion, etc., was evidence of "injury," within the meaning of
the contract, which would entitle defendants to terminate
the lease. The submission of the case on that theory would
seem clearly to have given the defendants the benefit, in
large measure, of their contention that the failure of the
landlord to perform her alleged agreement to furnish a "first-
class" building resulted in rendering the premises untenant-
able and that such failure worked a constructive eviction
which entitled defendants to surrender the premises.

But there was abundant evidence tending to establish
6, 7 that, if there was a condition of untenantability,
resulting from injury or otherwise, it had existed
from the beginning of the tenancy. The defendants them-
selves testified that the damp and unhealthful condition of
the building was known to them practically from the time
of entering into possession. It is admitted that that condi-
tion was known at the time of the compromise settlement of
differences on December 31. 1920, six months after they
took possession. That a right to terminate the lease on
account of the alleged dampness and consequent untenant-
able condition, could be waived, and that there was abundant
evidence of waiver, we think, is beyond question. 16 R.
C. L., 965, § 475.

The appellants insist, however, that in view of their
8 contention of fact, supported by evidence, that they
had no knowledge that the unsatisfactory condition
of the building was caused by latent defects of construction
until just prior to the time of surrendering the premises,
the trial Court committed prejudicial error in charging that
the conduct of the tenants in remaining in possession after
they knew or could have ascertained the untenantable condi-
tion would amount to waiver. We find nothing in the
general charge which would warrant that construction of
the Judge's instructions, certainly, when considered in con-
nection with the defendants' fourth and fifth requests, which
were thus charged by the Court:

"(4) If you find that it was not in a completed condition within the meaning of the parties when delivered to the defendants, the question then arises, Did the defendants waive the defects by going into possession under the lease? If they knew of the condition of which they now complain when they went into possession, or found it out afterwards and remained in the building knowing the condition, they have waived it. But, if it was a hidden defect and such a defect that reasonable inspection would not have disclosed it, then they did not waive it by going into possession.

"I charge you that. It is about the question of whether they waived by going in in the first instance.

"(5) It is entirely possible for a situation to arise where a tenant would know there was something wrong and yet not know what it was or what caused it. 'Waiver' is the intentional relinquishment of a known right and one must be familiar with the facts before he can be said to have waived a right upon those facts.

"I have given you the definition of waiver."

We perceive no error in the Judge's instructions as to waiver of which defendants are in position to complain, and appellants' contentions in that aspect of the case are overruled.

The next proposition argued is that the effect of restricting the issue to be determined by the jury to the questions of tenantability of the premises and waiver by defendants was to deprive the defendants of the substantial contention of fact to which their thirteenth request to charge was directed, viz.: That, where the landlord has agreed to relet the abandoned premises for the benefit of whomever might be entitled to the rental in accordance with the ultimate result of the controversy between the landlord and tenant, the landlord must exercise due diligence to rent the premises at a reasonable rental, and, "if he fails to do this, then the loss actually realized from reletting the premises is not that full measure of deduction the tenant is entitled to receive on the rent stipulated in the lease."

It is contended that there was evidence to support an inference of fact that the plaintiff had failed to exercise due diligence in securing an adequate rental from the building after the abandonment by defendants, and that the defendants were entitled to have that issue passed upon by the jury and the thirteenth request charged, to the end that the claim against them be reduced, not by the amount actually received, but by what should have been obtained by the landlord in the exercise of proper diligence. It was alleged in the complaint that, during the period for which rent was due by defendants under the contract, portions of the building had been rented to other parties "without prejudice to the claims of either of the parties" and that plaintiff had deducted the amounts so received from the amount of the claim against defendants. That allegation was denied by the answer; but the answer contains no allegation that any agreement was made for the reletting of the premises by the landlord for the benefit of the tenant and asserts no right, either to have the reletting construed as such acceptance of the surrender as would wholly discharge the tenants from liability, or as would entitle them to a diminution of the amount of the rent claimed by way of damages for failure of the landlord to exercise due diligence or for want of good faith in performing the agreement. In that state of the pleadings, considered in the light of the evidence adduced, we are of the opinion that prejudicial error may not soundly be imputed to the trial Court for failure to submit an issue as to such breach of an agreement to relet, under the instruction requested in the thirteenth request. See 36 C. J. 342, §§ 1153, 1154. The eleventh exception must therefore be overruled.

The only remaining contention, which is not sufficiently disposed of by the foregoing discussion, is that the trial Judge erred in defining "untenantable" as meaning "not fit to be used for the purpose it is meant to

be used, and for which it is rented," and in·not charging, as- requested, that "untenantable has reference to an injury to the building which substantially affects the enjoyment of it by the tenants." We think the definition of "untenant- able" given by the Judge was more favorable to the defend- ants, from the viewpoint of their contentions of fact in the case, than the definition requested. A building, obviously might not be untenantable merely because it is not suited to a particular use; and, on the other hand, a building might be or become untenantable without reference to any "injury" affecting the tenant's enjoyment of the premises. The meaning to be attributed to the term "untenantable" is obviously to be determined from the connection in which it is used in a contract and in the light of the facts of the particular case, as affected by the general doctrine of the law applicable, and particularly by the principles that there is no implied warranty that premises shall be fit and suitable for the use for which the lessee requires them (16 R. C. L., 772, § 268), and no implied covenant on the part of the landlord to repair. That, under the facts of this case, ap- pellants were not prejudiced by the Court's construction and interpretation of this term, we think, is perfectly apparent.

All the exceptions are overruled, and the judgment of the County Court is affirmed.

MESSRS. JUSTICES WATTS and FRASER concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.