### 22289

C. B. YOUNG, Sr., as Administrator of the Estate of Jacqueline Laverne Young, Appellant, v. Joseph O. MORRISEY, Jr., Garth H. Sherman and Richard L. Neibling, d/b/a GeneraL Partners of the Limited Partnership of Broadmoor Apartments of Spartanburg, Respondents.

(329 S. E. (2d) 426)

Supreme Court

*Albert V. Smith* and *Robert M. Holland,* of Spartanburg, *for appellant.*

*James W. Hudgens,* of Spartanburg, *for respondents.*

April 17, 1985.

HARWELL, Justice:

These wrongful death and survival actions were instituted by the appellant administrators of the estates of Jacqueline Young and Tonnette Wells against the respondent general partners of Broadmoor Apartments of Spartanburg. The trial judge entered summary judgment for the respondents. We affirm.

The respondents served as owner/general contractors for the construction in 1976 of the Broadmoor Apartments. They entered into a contract with The Rogers Company in which Rogers agreed to furnish "in excellent workmanlike manner all materials, supplies, services, labor, layout, tools, equipment, supervision ... and all other items necessary to complete entirely the electrical system ..." Rogers served as electrical subcontractor throughout the project. He per-

formed all electrical work, including the wiring of the heating and air conditioning units in the individual apartments.

Cynthia Wells rented an apartment from Broadmoor. On June 1, 1981, Cynthia arrived at the apartment at about 10:30 P.M., accompanied by two overnight guests, Jacqueline Young (age 15) and Tonnette Wells (age 14). The two girls stayed up to watch television, and Cynthia went to bed. She later heard the others girls go to bed in another bedroom. During the night, she awoke to hear Tonnette's voice calling her name. Cynthia jumped out of bed, saw that the apartment was filled with smoke, and knocked a window out. She jumped to the ground, but the other girls perished in the fire.

The depositions of experts revealed that the fire originated in the control box of the furnace as a result of defective or improperly installed wiring.

The Complaints purport to allege causes of action for strict liability, implied warranty of habitability, and negligence. The trial court properly granted the respondents summary judgment.

## STRICT LIABILITY

The Complaints alleged that Broadmoor placed on the market an apartment which was defective, unsafe, and unreasonably dangerous. They further alleged that, as a result of the defective condition, the appellants' decedents suffered severe personal injuries resulting in death and that the landlord should be held strictly liable. We decline to hold the landlord an insurer against personal injuries to tenants and guests arising out of latent defects in construction.

Traditionally, under the law of South Carolina, a landlord owes no duty to maintain leased premises in a safe condition. Absent an express warranty or fraudulent concealment, he is not liable for any defect in the leased premises. A landlord may, however, enter into a binding agreement to keep the demised premises in repair, but even then the landlord is entitled to notice of any existing defects before becoming obligated to repair. Even when a landlord so obligates himself, a failure to make repairs will give rise merely to a right of action for breach of contract under which damages are not recoverable for per-

sonal injuries sustained by reason of the defective condition of the premises.[1] *Timmons v. Williams Wood Products Corp.*, 164 S. C. 361, 162 S. E. 329 (1932); *Conner v. Farmers and Merchants Bank*, 243 S. C. 132, 132 S. E. (2d) 385 (1963); *Sheppard v. Nienow*, 254 S. C. 44, 173 S. E. (2d) 343 (1970).

The appellants allege no fraudulent concealment or express warranty by Broadmoor to maintain the premises in a safe condition. Broadmoor had apparently covenanted to repair the leased premises, but this duty arose only upon notice of the defect.

A New Jersey court listed numerous compelling reasons for refusing to impose strict liability on landlords.

(1) A landlord is not engaged in mass production whereby he places his product — the apartment — in a stream of commerce exposing it to a large number of consumers; (2) he has not created the product with a defect which is preventable by greater care at the time of manufacture or assembly; (3) he does not have the expertise to know and correct the condition, so as to be saddled with responsibility for a defect regardless of negligence; (4) an apartment includes several rooms with many facilities constructed by many artisans with differing types of expertise, and subject to constant use and deterioration from many causes; (5) it is a commodity wholly unlike a product which is expected to leave a manufacturer's hands in a safe condition with an implied representation upon which the consumer relies; (6) the tenant may expect that at the time of letting there are no hidden dangerous defects known to the landlord of which the tenant has not been warned, but he does not expect that all will be perfect in his apartment for all the years of his occupancy; (7) to apply strict liability would impose an unjust burden on property owners; how can a property owner prevent a latent defect or repair when he has no way of detecting

---

[1] The rationale for disallowing recovery for personal injuries is that since a duty to make repairs arises solely by virtue of a covenant in a contract of letting, the breach thereof gives rise merely to an action *ex contractu.* Damages for personal injuries are consequential and too remote reasonably to have been within contemplation of the contracting parties. *Timmons v. Williams Wood Products Corp.*, 164 S. C. 361, 162 S. E. 329 (1932).

it? And if he can't prevent the defect, why should he be liable?

*Dwyer v. Skyline Apartments, Inc.*, 123 N. J. Super. 48, 301 A. (2d) 463 (1973), *aff'd mem.*, 63 N. J. 577, 311 A. (2d) 1 (1973).

This Court has rejected the insurer concept in numerous similar settings. Merchants are not insurers of the safety of their customers. *See* cases collected at 14 S. C. Digest *Negligence* Key No. 32(1). Common carriers are not insurers of the safety of their passengers. *Singletary v. Atlantic Coast Line Ry. Co.*, 217 S. C. 212, 60 S. E. (2d) 305 (1950). Innkeepers are not insurers of their guests' safety. *See* cases collected at 11 S. C. Digest *Innkeepers* Key Nos. 10.1, 10.3. Amusement operators do not insure their patrons' safety. *See* cases collected at 17A S. C. Digest *Theaters and Shows* Key No. 6. Nor do we hold landlords insurers of the safety of tenants and guests from injuries caused by latent defects.

## IMPLIED WARRANTY OF HABITABILITY

The appellants next contend that the respondents breached an implied warranty of habitability in failing to provide an apartment free from latent defects. As a general rule, there is no implied warranty of fitness or habitability in leases. A lessee takes leased premises, in the absence of an express warranty, or of fraud or misrepresentation, in the condition and quality in which they are. 49 Am. Jur. (2d) *Landlord and Tenant* §§ 768, 769 (1970), citing *Mallard v. Duke*, 131 S. C. 175, 126 S. E. 525 (1925). This rule applies in cases involving personal injuries. *Id.* § 771. *See* 40 A.L.R. (3d) 646 (1971).

The appellant urges us to extend the holding of *Lane v. Trenholm Building Co.*, 267 S. C. 497, 229 S. E. (2d) 728 (1976) to create an implied warranty of habitability in leases. *Lane* is distinguishable. It involved the sale of a new house with a septic tank system that failed. The instant case involves a lease rather than a sale, personal injuries to a guest rather than property loss to the purchaser, and an apartment used by many lessors rather than a new house. We conclude that *Lane* should not be extended to imply a warranty in the case at bar.

## NEGLIGENCE

The appellants assert that Broadmoor should be held liable for the alleged negligence of the subcontractor. However, they do not challenge the independent contractor status of the subcontractor who performed the electrical wiring work. Nor do they challenge the rule that a general contractor/owner is not liable for torts of an independent subcontractor. Rather, the appellants rely on an exception to the general rule. They assert that the respondent general contractors remain liable for torts occurring during inherently dangerous work. This exception does not apply here. It applies where the work is not of common occurrence and involves the risk of serious harm to others or their property during the course of the performance; it does not apply to alleged negligence manifesting itself after performance. *See South Carolina Natural Gas v. Phillips,* 289 F. (2d) 143 (4th Cir. 1961). Electrical work is of very common occurrence and does not involve a serious risk to third parties during its performance. The appellants' attempt to extend this exception to negligence of a subcontractor manifesting itself after performance of the work is not persuasive.

The appellants also allege that the respondent knew of the defective condition and negligently failed to repair it. The tenant testified by deposition that the air conditioner had not been cooling properly and that two Broadmoor repairmen had attempted to repair it. However, there is no indication that this problem was at all related to the defective or improperly installed wiring.

The appellants additionally seek to show notice to Broadmoor of the defect through the discussions between Mr. Brewer, the Broadmoor project manager, and Mr. Rogers, the electrical subcontractor. Apparently, Brewer and Rogers had discussed the use of aluminum rather than copper wire in the air conditioner. A label inside the unit prohibited the use of aluminum wire. Therefore, the appellant asserts Broadmoor had notice that placing aluminum wiring into the unit could create a dangerous situation. We disagree. The record indicates that Brewer was not an electrical engineer. He depended upon Rogers for expertise and did not supervise the day-to-day work. There is no indication that

Brewer had occasion to read th label inside the unit.

The grant of summary judgment to the respondent land-lord is, accordingly,

Affirmed.

LITTLEJOHN, C. J., and NESS, GREGORY and CHANDLER, JJ., concur.