718 A.2d 619

Howard STERNBERGER, et al.

v.

KETTLER BROTHERS, INC.

No. 325, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Oct. 1, 1998.

Steven M. Pavsner (Joseph Greenwald & Laake, P.A., Greenbelt, Charles A. Schneider, Washington, DC, on the brief), for Appellants.

Allan J. Malester (Catherine A. Bledsoe and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C., on the brief), Baltimore, for Appellee.

Argued before MOYLAN, THIEME and KENNEY, JJ.

MOYLAN, Judge.

The appellee, Kettler Brothers, Inc., is a builder which has been in the business of building and selling residential townhouses in Montgomery County since the late 1970's. The three appellants, suing on behalf of themselves and others similarly situated, purchased townhouses from Kettler Brothers between December, 1985 and October, 1986. The appellant Howard Sternberger purchased his townhouse in December, 1985; the appellant Sherry Dunn purchased her townhouse in March, 1986; and the appellant Ann Wexler purchased her townhouse in October of 1986.

The appellants, in what was ultimately a certified class action, sued Kettler Brothers for unfair and deceptive trade practices under the Consumer Protection Act, Md. Ann.Code, (1990 Repl.Vol.), Commercial Law Art., § 13–301(1), (2), and (3). Kettler Brothers moved to have the action dismissed. A hearing on the motion was held before Judge Martha G. Kavanaugh in the Circuit Court for Montgomery County on October 23, 1996. Both parties submitted and Judge Kavanaugh considered matters outside the pleadings and the motion was thereby transmuted into a motion for summary judgment. Maryland Rule 2–322(c) provides:

If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion *shall be treated* as one for summary judgment. . . .

(Emphasis supplied).

In her Memorandum Opinion and Order of November 7, 1996, Judge Kavanaugh granted relief in favor of Kettler Brothers on two separate and alternative grounds. One of them was that the 1996 suit brought by the appellants was

barred by the Statute of Limitations. Her ruling in this regard was:

> The plaintiffs and the defendant agree that the three-year Statute of Limitations applies to CPA [Consumer Protection Act] violations. However, the homeowners contend that the statute is tolled due to alleged fraud by the builder. Their contention is based on the allegation that the builder lured the homeowners into a lawsuit against only the manufacturers and not against the builder. The above-mentioned 1990 correspondence between the homeowners and Kettler Brothers belies this contention. There is no allegation in the complaint that amounts to the kind of fraud needed to toll the applicable statute of limitations. The homeowners were on notice as of 1990 and therefore, the instant action was filed outside of the time limits absent specific allegations of misconduct by Kettler Brothers to the three Plaintiffs.

We affirm that ruling. Judge Kavanaugh's ruling that limitations had run coupled with our affirmance of that ruling is fully dispositive of the present appeal. A brief discussion of the time factor, however, is appropriate.

The purchases of new homes by the appellants in this case occurred between December, 1985 and October, 1986. In the course of the construction of the homes, Kettler Brothers, as required by the Montgomery County Code, used a type of fire retardant treated ("FRT") plywood roof sheathing. The use of FRT plywood was a relatively recent innovation in the mass housing industry at that time and was intended to prevent the spread of flames along the roof line of adjoining homes in the event of fire. The use of FRT plywood eliminated the need for costly brick parapet fire barriers along the roofs between the houses. It was subsequently discovered, however, that sometimes the chemical formulations used by some manufacturers of FRT plywood made the plywood vulnerable to thermal degradation under certain climatic conditions.

In early 1990, Kettler Brothers discovered that some of the plywood it had used was subject to the possibility of thermal

degradation. On its own initiative, on April 25, 1990, Kettler Brothers sent a letter to each of the homeowners advising them that it had "received information relating to the possible deterioration of fire retardant treated ("FRT") plywood used in roof construction throughout much of the United States." The letter advised each of the homeowners that the roofs of their townhouses were constructed with FRT plywood which could deteriorate under certain conditions. Kettler Brothers offered to conduct free roof inspections.

■ We are fully satisfied that each of the appellants was on notice as to the possibility of faulty materials having been used in the construction of their homes as of April, 1990. Suit in this case was not filed until April 24, 1996.

Two of the three appellants, moreover, were on notice not simply of the possibility of roof damage but of actual roof damage as early as December, 1990 and March, 1992, respectively. After receiving a request from appellant Sternberger on August 22, 1990, the appellee inspected appellant Sternberger's roof. On December 14, 1990, appellant Sternberger received written notification from the appellee that "the fire retardant plywood sheathing on [his] roof is deteriorated and should be replaced." On the same day, appellant Sternberger signed a FRT Plywood claim form under which he expressly did not waive or release any "claims or rights [he] may have" against the appellee.

After receiving written requests by appellant Dunn in April of 1990, the appellee inspected appellant Dunn's roof on July 25, 1990 and sent her notification that the FRT appeared to be structurally sound at that time. Following another request, the appellee re-inspected appellant Dunn's roof on March 11, 1992, and notified appellant Dunn that "the fire retardant plywood sheathing on [her] roof is deteriorated and should be replaced." On the same day, appellant Dunn signed a FRT Plywood claim form under which she expressly did not waive or release any "claims or rights [she] may have" against the appellee.

If the third appellant, Ms. Wexler, was not aware of actual roof damage until November, 1993, she was on notice as to the strong possibility and she failed to exercise due diligence in keeping abreast of the condition of her roof, either through accepting the appellee's offer to reinspect her roof for her or by hiring her own inspector. After receiving a request from appellant Wexler on September 13, 1990, the appellee inspected appellant Wexler's roof and sent her notification that the FRT appeared to be structurally sound at that time. Despite the appellee's offer to re-inspect her roof annually for up to 10 years from when the appellee originally sold the house, appellant Wexler never requested such re-inspection from the appellee. In November 1993, a professional roofer inspected appellant Wexler's roof and found FRT deterioration, and recommended that the roof be replaced. Between September, 1990 and November, 1993, the appellant Wexler did nothing.

■ Judge Kavanaugh noted that the appellants were on notice as of 1990 of the FRT problem. Once the appellee notified each home owner of the potential FRT problem, the law places on each home owner a duty to act with due diligence in determining whether they suffered injury as a result of the FRT situation. *See Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 241, 469 A.2d 867, *cert. denied,* 300 Md. 88, 475 A.2d 1200 (1984).

The appellants essentially acknowledge their limitations problem but seek to wriggle out from under it by claiming that Kettler Brothers fraudulently lured them into a sense of false security and thereby tolled the running of the Statute of Limitations. When Kettler Brothers discovered the damage to the roofs of the appellant Sternberger and the appellant Dunn, it offered to forward claim forms on their behalf to an insurance company. Those appellants now claim that Kettler Brothers led them to believe that the form each signed was "a perfected claim against Kettler and [a] preservation of all their existing rights against Kettler." Such a contention, however, is belied by the language of the claim for itself:

I understand that the fire retardant treated plywood on my roof is deteriorated and in need of replacement. I am making a claim upon Kettler Brothers for the repair of my roof. *I also understand that Kettler Brothers is not admitting any liability, and that it has not promised or otherwise agreed to repair my roof,* but is taking this Claim Form from me for the purpose of submitting my claim to its insurers and any other appropriate parties. *I am not waiving or releasing any claims or rights I may have against Kettler Brothers or anyone else by signing this Claim Form.*

(Emphasis supplied).

Judge Kavanaugh's Memorandum and Order of November 22, 1996, predicated its ruling in favor of Kettler Brothers on two alternative grounds. In addition to finding that limitations barred the suit, Judge Kavanaugh also ruled that the complaint failed to state a viable cause of action. For whatever reason, she dismissed the complaint but granted the appellants leave to amend. An amended complaint would seem to have been an exercise in futility in view of the dispositive ruling on limitations. Nonetheless, the appellants filed an amended complaint. Kettler Brothers again moved to dismiss on the ground that even the amended complaint failed to state a viable cause of action. Judge Kavanaugh agreed.

She ruled with respect to the amended complaint exactly as she had ruled with respect to the initial complaint:

I have reviewed the cases and the pleadings and the memoranda.

Basically, what the plaintiffs have alleged is the failure of Kettler to disclose at the time of the sale FRT plywood in the roofs of the various plaintiffs.

Upon review of the plaintiffs' amended complaint, it appears that no additional factual allegations have been asserted to withstand the granting of the motion to dismiss.

Without factual allegations going to the defendant's knowledge of the defective sheathing at the time of the sale,

plaintiffs have failed to state a claim under the Maryland Consumer Protection Act.

Here the plaintiffs have talked about an express representation in the brochure. However, I do not feel that that is the type of actual conduct which would withstand a motion to dismiss.

There has been an admission by the plaintiffs that they have no smoking gun, so to speak; there is nothing that they can allege that Kettler knew at the time of making this statement that they were omitting a material fact or making a misrepresentation.

I do believe that there has to be some type of knowledge because this was an admission, and I am not compelled to believe that this statute imposes what we have discussed as strict liability, and that would be my grounds for a motion to dismiss.

Reviewing the cases, I just cannot find that under the allegations the CPA would impose liability upon Kettler Brothers.

■ By way of a gratuitous and alternative holding, we agree with and, therefore, affirm Judge Kavanaugh's alternative ground for granting judgment in favor of the appellee. There was no possible way, in the mid–1980s, for the appellee to know, or reasonably to discover, that FRT could deteriorate due to weather, treatment, etc. The appellants do not contend otherwise. Furthermore, when the appellee did ultimately discover that there might be problems with FRT, it immediately notified the appellants individually of the situation. Thus, not only did the appellee not misrepresent or deceive the appellants, but the appellee took affirmative steps to inform the appellants of possible problems they might encounter. The United States District Court for the District of Maryland's conclusion in *Hayes v. Hambruch,* 841 F.Supp. 706 (D.Md.1994), *aff'd,* 64 F.3d 657 (4th cir.1995), said it well:

[A person] may not be held liable under the CPA for a failure to state a material fact concerning a defect in the [ ]

premises, unless the [person] knows or has reason to know of the defect.

*Id.* at 714. *Accord Richwind Joint Venture 4 v. Brunson,* 335 Md. 661, 685, 645 A.2d 1147 (1994); *Scroggins v. Dahne,* 335 Md. 688, 696, 645 A.2d 1160 (1994) (As problems did not exist at time lease was entered into, person could not be found to have been engaged in deceptive trade practice under the CPA).

As the Supreme Court of South Carolina stated: "[H]ow can a property owner prevent a latent defect or repair when he has no way of detecting it? And if he can't prevent the defect, why should he be liable?" *Young v. Morrisey,* 285 S.C. 236, 329 S.E.2d 426, 428–29 (1985). Without having alleged, in good faith, that the appellee knew of the problems with FRT at the time the appellants purchased their homes, the appellants' complaint was properly dismissed for failing to state a claim for which relief could be granted.

*JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.*