**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1885**

JOHN E. THOMPSON,

Plaintiff - Appellant,

v.

CDL PARTNERS LLC,

Defendant - Appellee,

v.

DON ALVIN MESSERVY,

Third Party Defendant - Appellee.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Patrick Michael Duffy, District Judge.  (2:08-cv-02423-PMD)

Submitted:  April 21, 2010                Decided:  May 14, 2010

Before MOTZ, SHEDD, and AGEE, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Daniel L. Prenner, PRENNER MARVEL, P.A., Charleston, South Carolina, for Appellant.  Eric G. Fosmire, COLLINS & LACY, P.C., Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

John E. Thompson appeals the district court's grant of summary judgment in favor of CDL Partners LLC (CDL), in this personal injury action. For the following reasons, we affirm.

I.

In 2006, Thompson, a resident of Florida, was living in Folly Beach, South Carolina, in a residential apartment owned and maintained by CDL.[1] Thompson's apartment was on the second floor of a three-floor complex. Garages were on the ground floor and two apartments were located on each of the second and third floors. Each floor had an exterior balcony and the stairwell—located in the middle of the building—was also exterior. On the evening of July 19, 2006, Thompson was smoking a cigarette and leaned against the second-floor balcony railing. The railing collapsed, and Thompson fell roughly twenty feet to the cement parking lot below. Thompson landed on his arms and head, sustaining significant injuries including two broken arms and a head injury. Karl Poruben, who lived above Thompson, discovered him in the parking lot at approximately 10:30 or 11 p.m. Because of darkness at that late hour, Poruben did not

---

[1] CDL purchased the complex from the original builder, Don Alvin Messervy, in 2004. Messervy constructed the building in 1996.

immediately grasp the severity of Thompson's injuries and aided him up the stairs. In Thompson's apartment, Poruben saw how severe Thompson's arm injuries were. Poruben called 911, and Thompson was soon transported to an area hospital.

Prior to Thompson's fall, there had been two attempts to fix the railing in question. Roughly two weeks before, Thompson's next door neighbor, Kenneth McDowell, noticed the railing just "dangling," and, because Thompson was not home at the time, McDowell endeavored to repair it. McDowell and Poruben had previously seen Thompson resting his feet on the railing while sitting on the balcony. After McDowell attempted to fix the railing, he informed Thompson that, because the wood was in poor condition, he should not lean against it. Several days later, Poruben saw that the railing had completely fallen off and landed on his car. Poruben notified Thompson, and later that day he saw Thompson attempting to affix the railing again. For his part, Thompson does not remember the incident with Poruben, but he does remember McDowell mentioning that the railing was in poor condition.

After McDowell fixed the railing, he mentioned its condition to his roommate, James Polito. Because McDowell was subleasing a room from Polito, Polito—not McDowell—typically dealt with the landlord. In fact, it was McDowell's understanding that Polito had an agreement with the building's

3

original owner, Don Alvin Messervy, to perform certain upkeep on the property. McDowell thought that Polito spoke to CDL regarding the railing, but Polito could not recall doing so. McDowell, Poruben, and Thompson all testified that they did not notify CDL about the railing's condition prior to Thompson's fall.

On July 3, 2008, Thompson filed this action in the District of South Carolina against CDL, alleging claims for common law negligence and a violation of the South Carolina Residential Landlord and Tenant Act ("SCRLTA"). The district court entered an initial scheduling order, setting a discovery deadline of June 30, 2009. Prior to this deadline, on January 21, 2009, CDL moved for summary judgment. The district court, without a hearing, granted the motion on July 10, 2009. Thompson filed a timely notice of appeal and this court has jurisdiction pursuant to 28 U.S.C. § 1291 (2006).

II.

On appeal, Thompson argues that the district court erred in granting summary judgment on both of his state law claims and also erred in granting summary judgment prior to the discovery deadline. We address each contention in turn.

We review a grant of summary judgment <u>de</u> <u>novo</u>. <u>Jennings v. University of North Carolina</u>, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). We generally must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).

The parties agree that South Carolina substantive law controls. As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. <u>Wells v. Liddy</u>, 186 F.3d 505, 527-28 (4th Cir. 1999). But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue, we must predict how that court would rule if presented with the issue. <u>Id.</u> In so predicting, decisions of the South Carolina Court of Appeals, as the state's intermediate appellate court, "constitute the next best indicia of what state law is, although such decisions may be disregarded if the federal court is convinced by other persuasive data that the highest court of the state would decide

otherwise." <u>Liberty Mut. Ins. Co. v. Triangle Indus. Inc.</u>, 957 F.2d 1153, 1156 (4th Cir. 1992) (internal quotation marks omitted). With this framework in place, we turn to Thompson's SCRLTA and common law negligence claims.

1.

"Traditionally, under the law of South Carolina, a landlord owes no duty to maintain leased premises in a safe condition." <u>Young v. Morrisey</u>, 329 S.E.2d 426, 428 (S.C. 1985). The SCRLTA, enacted in 1986, requires a landlord to comply with applicable housing codes materially affecting health and safety, and "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." S.C. Code Ann. § 27-40-440(a)(1)-(2) (2007). The SCRLTA provides for recovery of actual damages as a result of any material noncompliance by the landlord. S.C. Code Ann. § 27-40-610(a)-(b) (2007). Negligence actions may be brought under the SCRLTA. <u>Pryor v. Northwest Apartments, Ltd.</u>, 469 S.E.2d 630, 632 (S.C. Ct. App. 1996). "As with any negligence action, plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach." <u>Id.</u> at 633.

Both parties agree that the railing did not satisfy required safety standards under § 27-40-440 at the time of

6

Thompson's fall. Thompson argues that is the extent of his burden under the SCRLTA. CDL argues that, even under the SCRLTA, Thompson must show that CDL had notice of the defective condition. The district court, relying primarily on a recent case by the South Carolina Court of Appeals,[2] Robinson v. Code, 682 S.E.2d 495 (S.C. Ct. App. 2009), agreed with CDL's position.

We also agree with CDL, that, in light of the rulings of the South Carolina Court of Appeals, the South Carolina Supreme Court would require that a landlord have notice of a defect before being liable to the tenant under the SCRLTA. In 1989, the Court of Appeals held, just years after the SCRLTA's enactment, that "the RLTA by express words creates a cause of action in tort in favor of a tenant of residential property against his landlord for failure, after notice, to make necessary repairs and to do what is reasonably necessary to keep the premises in a habitable condition." Watson v. Sellers, 385 S.E.2d 369, 373 (S.C. Ct. App. 1989) (emphasis added). Recently, in Code, the Court of Appeals reaffirmed that "the Landlord-Tenant Act require[s] written notice to the landlord specifying the acts and omissions constituting the breach and failure of the landlord to make the necessary repairs after notice." Code, 682 S.E.2d at 497-98. In Code, a single-family

_____

[2] The district court incorrectly identified Robinson v. Code as having been decided by the South Carolina Supreme Court.

7

home that had been converted into a rental property lacked smoke detectors in violation of state law. The Court of Appeals nonetheless concluded that, because the plaintiffs failed to allege that they notified the owner of the lack of smoke detectors, they could not state a claim under the SCRLTA. Id. at 498.

This consistent interpretation of the SCRLTA by the Court of Appeals convinces us that the South Carolina Supreme Court would require that the tenant provide the landlord notice of a defective condition before liability attaches under the SCRLTA. In addition, the Court of Appeals pointed to two provisions of the SCRLTA that buttress such a conclusion. First, the Act mentions the delivery of "a written notice to the landlord specifying the acts and omissions constituting the breach." S.C. Code Ann. § 27-40-610(a). In addition, the SCRLTA states that the tenant's rights "do not arise until he has given notice to the landlord and the landlord fails to act within a reasonable time." S.C. Code Ann. § 27-40-630(d).

Thompson next argues that, even under CDL's interpretation of the SCRLTA, there was sufficient evidence to survive summary judgment because, either CDL did have notice of the defective railing, or McDowell was an agent of CDL. The district court ruled against Thompson on both issues.

8

Regarding notice, the district court found that summary judgment was appropriate because "[e]ssentially, then, all residents of the building in question have given deposition testimony in which they explicitly denied ever contacting [CDL] regarding the railing. No reasonable jury could evaluate this information and rule that [CDL] received notice." On appeal, Thompson points to McDowell's testimony that he told Polito about the railing and that McDowell thought that Polito spoke to CDL about getting it fixed. As the district court explained, however, McDowell "acknowledged" that he himself had not contacted CDL and "never claimed to have any first-hand or direct knowledge that Polito contacted [CDL]." Moreover, Polito testified in his deposition that he did not recall contacting CDL. We agree with the district court that McDowell's speculation that his roommate might have contacted CDL—in the face of admissions from McDowell, Polito, Poruben, and Thompson that none of them did contact CDL—is insufficient to create a genuine issue of material fact.

Thompson also argues that CDL had notice of the defect because McDowell was CDL's apparent agent and, thus, his notice can be imputed to CDL. South Carolina recognizes the law of apparent agency, that is:

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered

9

> by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

Simmons v. Tuomey Reg'l Med. Ctr., 533 S.E.2d 312, 322 (S.C. 2000) (internal quotation marks omitted). According to Thompson, McDowell's testimony regarding his role in the upkeep of the property suggests that McDowell was CDL's agent. The district court rejected this argument, concluding that McDowell never had any direct contact with CDL and that his behavior "constitute[d] being a good tenant and neighbor and taking pride in one's residence." The district court further concluded that, to the extent McDowell did perform work at the behest of CDL, "such behavior would have always been narrowly confined to a specific task, and would not give rise to the same general apparent agency." We agree with the district court that McDowell was not an agent of CDL. Under the law of apparent agency, CDL would still be required to have hired McDowell as an independent contractor performing functions for CDL. It is undisputed, however, that McDowell never spoke with CDL and that any agreement regarding yard work and upkeep was between Polito and CDL's predecessor, Messervy.

2.

Thompson also appeals the grant of summary judgment on his common law negligence claim. Under South Carolina law, a

10

plaintiff must prove four elements to recover under a negligence theory: "(1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; (3) resulting in damages to the plaintiff; (4) damages proximately resulted from the breach of duty." Thomasko v. Poole, 561 S.E.2d 597, 599 (S.C. 2002). "An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." Bishop v. S.C. Dep't of Mental Health, 502 S.E.2d 78, 81 (S.C. 1998).

The district court correctly granted summary judgment on this claim because Thompson cannot establish a duty on the part of CDL. As discussed above, "[t]raditionally, under the law of South Carolina, a landlord owes no duty to maintain leased premises in a safe condition." Morrisey, 329 S.E.2d at 428. Indeed, one of the purposes of the SCRLTA was to create a negligence action in this area. Thompson attempts to avoid this conclusion by suggesting that CDL created the hazard, but no record evidence supports the suggestion that CDL knew of the railing's condition, yet alone created it.

B.

Finally, Thompson argues that the district court erroneously granted CDL's summary judgment motion prior to the discovery deadline. Thompson is correct that, "[a]s a general rule, summary judgment is appropriate only after 'adequate time

11

for discovery.'"  Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996).  We have also explained, however, that "the nonmoving party cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery or moved for a continuance to permit discovery before the district court ruled."  Id.  Our approach dovetails with Federal Rule of Civil Procedure 56(f), which provides that a party opposing summary judgment may file an affidavit providing specific reasons that it cannot oppose a motion for summary judgment without the opportunity to conduct further discovery.  We place "great weight" on a Rule 56(f) affidavit, and have explained that "a party may not simply assert in its brief that discovery was necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit."  Evans, 80 F.3d at 961 (internal quotation marks and alteration omitted).  In Evans, we cited with approval a Second Circuit holding that "'the failure to file an affidavit under Rule 56(f) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'"  Id. (quoting Paddington Partners v. Bouchard, 34 F.3d 1132, 1137 (2d Cir. 1994)).

12

In this case, the district court set forth an initial discovery deadline of June 30, 2009, but CDL filed its motion for summary judgment on January 29.  In his response to CDL's motion, Thompson mentioned that the discovery deadline had not passed and that he "intend[ed] to notice the deposition of third-party defendant Don Alvin Messervy" prior to the deadline. Thompson did not file a Rule 56(f) affidavit, however, and never took Messervy's deposition even though the district court did not ultimately rule upon the summary judgment motion until July 10, 2009.[3]

Given this factual record, we conclude that the district court did not err in granting summary judgment before the discovery deadline.  Thompson had more than six months between the filing of CDL's summary judgment motion and the district court's order granting summary judgment to either file a Rule 56(f) affidavit or attempt to take more discovery. Because he did neither he cannot now be heard to complain that he lacked adequate discovery time.

---

[3] The district court entered a revised scheduling order on April 29, 2009, setting forth a new discovery deadline of August 31, 2009.

III.

We affirm the district court's grant of summary judgment in favor of CDL on Thompson's SCRLTA and common law negligence claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED